IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DAVID DEJESUS, SR.,                :
                                   :
        Plaintiff,                 :
                                   :
    v.                             : Civil Action No. 06-209-JJF
                                   :
WARDEN REPHEAL WILLIAMS, CMS,      :
DANA BOKER, and WILLIAM JOYCE,     :
                                   :
        Defendants.                :

David DeJesus, Sr., Pro se Plaintiff, Sussex Correctional Institute.

Erika Yvonne Tross, Esquire and Stacey Xarhoulakos, Esquire, Deputy Attorneys General, Delaware Department of Justice. Attorneys for Warden Raphael Williams

Eric Scott Thompson, Esquire, Wilmington, Delaware. Attorney for Defendants CMS.

**MEMORANDUM OPINION**

April 23, 2007
Wilmington, Delaware

**Farnan** *[signature]* **District Judge**

Presently before the Court is Defendant Warden Raphael Williams'[1] ("Warden Williams") Motion To Dismiss and Motion Of Defendant, CMS[2], To Dismiss Plaintiff's Complaint and Plaintiff's responses thereto. (D.I. 29, 33, 35, 37.) For the reasons set forth below, the Court will grant Warden Williams' Motion To Dismiss and will deny CMS' Motion To Dismiss. (D.I. 29, 33.)

I.  **BACKGROUND**

Plaintiff, a former inmate at the Howard R. Young Correctional Institution ("HRYCI") and now housed at the Sussex Correctional Institute ("SCI"), alleges that Defendants are deliberately indifferent to a serious medical need in violation of the Eighth Amendment. (D.I. 10.) The original Complaint was dismissed with leave to amend. Plaintiff filed an Amended Complaint and attached exhibits as part of the Amended Complaint. The actual allegations in the Amended Complaint are sparse, but Plaintiff attached a log of actions or inactions, grievances filed and other exhibits to support his claim. Plaintiff alleges that he has a liver condition, apparently Hepatitis C. The gist of his allegations is that his not receiving prompt and proper medical care.

---

[1]Incorrectly named by Plaintiff as "Repheal Williams."

[2]Correctional Medical Services, Inc.

Beginning October 25, 2005, Plaintiff submitted numerous grievances in an effort to receive medical care. In the first grievance Plaintiff asked to be seen by a doctor as soon as possible and to be given proper treatment. Plaintiff filed a grievance on March 6, 2006, asking that his case be reviewed. As of April 1, 2006, Plaintiff continued to seek medical treatment through the grievance process. Plaintiff's medical grievances were forwarded to the Medical Department for processing. Also, Warden Williams forwarded Plaintiff's correspondence to either the medical unit to address Plaintiff's concerns or to Defendant William Joyce ("Joyce")[3] for review and any action deemed appropriate. Defendant Dana Baker[4] ("Baker"), the Health Care Administrator also received copies of correspondence Plaintiff sent to Warden Williams. Plaintiff's grievances were investigated by either Baker or Joyce. Plaintiff's medical grievances were grouped together and on June 13, 2006, it was recommended that they be denied, noting that Plaintiff was seen for his condition on November 21, 2005, January 19, 2006, February 27, 2006, March 9, 2006, and May 31, 2006.

---

[3]The USM-285 forms for Defendants Baker and Joyce were returned unexecuted. (D.I. 38, 39.) They have never been served.

[4]Incorrectly named by Plaintiff as "Dana Boker."

-2-

## II. DISCUSSION

### A. Standard of Law

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). To that end, the Court assumes that all factual allegations in Plaintiff's pleading are true, and draws all reasonable factual inferences in the light most favorable to Plaintiff. Amiot v. Kemper Ins. Co., 122 Fed. Appx. 577, 579 (3d Cir. 2004). However, the Court should reject "unsupported allegations," "bald assertions," or "legal conclusions." Id. A Rule 12(b)(6) motion should be granted to dismiss a pro se complaint only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Warden Williams and CMS filed Motions To Dismiss the claims raised against them. (D.I. 29, 33.) Warden Williams moves for dismissal on the basis that the Amended Complaint fails to allege any personal involvement on his behalf and does not demonstrate

-3-

deliberate indifference to a serious medical need. He also asserts that he is entitled to Eleventh Amendment immunity as well as qualified immunity.

CMS moves for dismissal on the bases that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996, 42 U.S.C. § 1997e, the Amended Complaint does not contain facts that demonstrate CMS was deliberately indifferent to a serious medical condition, Plaintiff cannot prove any set of facts to demonstrate that CMS had a policy or custom that led the medical staff to deprive Plaintiff of necessary medical care, and CMS cannot be held liable under a theory of respondeat superior.

Both Warden Williams and CMS submitted exhibits outside the pleadings in support of their Motions to Dismiss. The Federal Rules of Civil Procedure provide that when a motion to dismiss is filed pursuant to Rule 12(b)(6) and matters outside the pleadings are presented to and not excluded by the Court, the matter shall be treated as one for summary judgment and disposed of as provided in Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(b). The Court will not consider the exhibits submitted by Warden Williams and CMS and will treat their motions as motions to dismiss pursuant to Fed. R. Civ. P. 12(b). The exhibits attached to the Amended Complaint are considered, however, since they are part and parcel of Plaintiff's Amended Complaint.

### B. Administrative Remedies

CMS argues that Plaintiff had not exhausted his administrative remedies at the time he filed his Complaint on March 30, 2006, as is required under 42 U.S.C. § 1997e(a) and, therefore, the Amended Complaint must be dismissed. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Under § 1997e(a) "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available. See Spruill v. Gillis, 372 F.3d 218, 227-28 (3d Cir. 2004); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000); but see Freeman v. Snyder, No. 98-636-GMS, 2001 WL 515258, at *7 (D. Del. Apr. 10, 2001) (finding that if no administrative remedy is available, the exhaustion requirement

need not be met). However, if prison authorities thwart the inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are "available" to him. Brown v. Croak, 312 F.3d 109, 112-13 (3d Cir. 2002). Additionally, "this Court has held that a § 1983 prisoner complaint should not be dismissed for failure to exhaust administrative remedies when the record indicates that plaintiff filed a grievance that has been completely ignored by prison authorities beyond the time allowed for responding to grievances under the grievance procedure." Woulard v. Food Service, 294 F.Supp.2d 596, 602 (D. Del. 2003) (citations omitted).

Delaware Department of Correction administrative procedures provide for a multi-tiered grievance and appeal process. Medical grievances are first forwarded to the medical services staff who attempt an informal resolution of the matter. If this fails, the grievance goes to the Medical Grievance Committee, which conducts a hearing. If the matter is still not resolved, the inmate may once again appeal. DOC Policy 4.4 (revised May 15, 1998).

The exhibits attached to Plaintiff's Amended Complaint indicate that he filed his first medical grievance on October 25, 2005. The exhibits further reflect that the grievance report was not received by the Medical Unit until April 25, 2006, some seven months later, and not until after Plaintiff filed his original Complaint. Moreover, Plaintiff filed subsequent grievances in an

effort to have his first grievance heard.  This lengthy delay in handling Plaintiff's initial grievance falls within the realm of one ignored by prison authorities beyond the time allowed. Accordingly, the Court will deny CMS' Motion To Dismiss on the issue of failure to exhaust administrative remedies.

      C.    **Personal Involvement/Failure To State A Claim**

      Warden Williams argues that the Amended Complaint fails to allege any personal involvement by him.  Plaintiff did not make any specific allegations against Warden Williams, but the Warden is referenced in the exhibits attached to the Amended Complaint.

      When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).  "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" Evancho v. Fisher, 423 F.3d at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights.  Id.; see Monell v. Department of Social Services, 436 U.S. 658, 694-95 (1978).  Supervisory liability may attach if the supervisor

implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. Sample v. Diecks, 885 F.2d 1099, 1117-118 (3d Cir. 1989); see also City of Canton v. Harris, 489 U.S. 378 (1989); Heggenmiller v. Edna Mahan Corr. Inst. for Women, No. 04-1786, 128 Fed. Appx. 240 (3d. Cir. 2005).

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Rather than exhibiting deliberate indifference to Plaintiff's medical condition, the exhibits attached to the Amended Complaint demonstrate that Warden Williams took action. He did not ignore the letters. Instead, he forwarded Plaintiff's letters on to the medical unit and health care administrators so they could address Plaintiff's medical concerns. Therefore, the Court will grant Warden Williams' Motion To Dismiss on the issues of personal involvement and failure to state a claim upon which

relief may be granted.[5]  (D.I. 29.)

### D. Claims Against CMS

CMS argues that the Amended Complaint fails to allege a cognizable claim in connection with medical treatment and points to Plaintiff's medical records.  As discussed, however, those records are not considered when ruling on a motion to dismiss. It also argues that it may only be held liable for a policy or custom that demonstrates deliberate indifference to Plaintiff's serious medial needs.

As previously discussed, the Amended Complaint contains scant allegations, but the exhibits attached to the Amended Complaint contain ongoing complaints regarding the delay of medical treatment to Plaintiff.

In order to state an inadequate medical treatment claim under the Eighth Amendment, an inmate must allege deliberate indifference to serious medical needs constituting "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. at 104.  When a plaintiff relies on the theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir. 1989); Miller v.

---

[5]The Court will not address the other issues raised by Warden Williams (i.e., Eleventh Amendment immunity, qualified immunity) because the allegations against him fail to state a claim upon which relief may be granted.

Correctional Med. Sys., Inc., 802 F.Supp. 1126, 1132 (D. Del. 1992). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. at 104-05.

Here, in order to establish that CMS is directly liable for the alleged constitutional violations, Plaintiff "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [Plaintiff] allege[s]." Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

The exhibits to Plaintiff's Amended Complaint show consistent complaints that CMS employees were aware of Plaintiff's condition, that they consistently ignored his complaints, and delayed treatment. The Court finds that, on a Motion To Dismiss, Plaintiff has adequately alleged a policy or custom of ignoring medical complaints and delay of treatment. Therefore, CMS' Motion To Dismiss for failure to state a claim is denied. (D.I. 33.)

### III. MISCELLANEOUS LETTERS

Plaintiff has filed several letters with the Court, all seeking relief. Accordingly, the Court will construe the letters as motions. (D.I. 56, 57, 60, 62, 66, 68, 70.)

In his February 22, 2007 Letter/Motion, Plaintiff seeks to amend the ad damnum clause of his amended complaint from $1,000,000 to $2,000,000. (D.I. 60.) He also seeks to add new Defendants as follows: Jeremy Wilkerson, Dr. Binnion, Dr. Smith, Nurse Ezekial, Betty Bradley, and Nurse Stethanie. Id.

The Court will grant the Motion To Amend the ad damnum clause and will grant the Motion To Amend the Complaint to add new Defendants. (D.I. 60.) Plaintiff will be given thirty days to file an Amended Complaint. Plaintiff is placed on notice that any Amended Complaint shall contain sufficient allegations to place new defendants on notice of any potential claim raised against them.

In his February 20, 2007, Plaintiff asks the court to assist in having his classification changed and to have him transferred to a different corrections facility.[6] (D.I. 57.) In his March 6, 2007 Letter/Motion, Plaintiff indicates that he is being kept in "the hole" and asks the Court to have him transferred. (D.I. 62.) Although not clear, he appears to allege his current

---

[6]Plaintiff's correspondence to the Court dated April 15, 2007, indicates he was transferred to the SCI.

housing situation is in retaliation for filing this lawsuit, but does not indicate who took the retaliatory action. <u>Id.</u> In his March 14, 2007 letter Plaintiff again asks to court to have him transferred. (D.I. 66.)

The Motions For Transfer and For Classification Change seek relief on issues that is outside the purview of the court. "[M]aintaining institutional security and preserving internal order and discipline" are the central goals of prison administration. <u>Bell v. Wolfish</u>, 441 U.S. 520, 546 (1979). The Court has no authority to dictate Plaintiff's housing assignment or prison classification. These determines are made by prison authorities as part of the administration of the prison. Therefore, the Court will deny the Motions To Transfer and For Classification Change. (D.I. 57, 62, 66.)

In his February 18, 2007 and March 25, 2007 Letter/Motion, Plaintiff moves for appointed counsel and a court appointed expert. (D.I. 56, 68.) The "decision to appoint counsel may be made at any point in the litigation, and may be made by a district court sua sponte." <u>Montgomery v. Pinchak</u>, 294 F.3d 492, 499 (3d Cir. 2002). It is within the court's discretion to seek representation by counsel for plaintiff, but this effort is made only "upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting. . .from [plaintiff's] probable inability without such assistance to

present the facts and legal issues to the court in a complex but arguably meritorious case." Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984); accord Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993)(representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law).

After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel, including: (1) plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of plaintiff to pursue investigation; (4) plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and 6) whether the case will require testimony from expert witnesses. Tabron, 6 F.3d at 155-57; accord Parham, 126 F.3d at 457; Montgomery v. Pinchak, 294 F.3d at 499.

Plaintiff has not supported his request for an appointed attorney other than to make a few statements in that regard. It is apparent from his pleadings that Plaintiff is not particularly articulate. Indeed, it is only from the numerous exhibits attached to his Amended Complaint that the Court was able to discern what Plaintiff's claim is and how he allegedly has been harmed. Also, Plaintiff's case appears to have sufficient merit

to be sufficiently from the standpoint of necessary medical testimony that it is appropriate to seek counsel for him. Accordingly, the Court will grant the Motions For Appointment Of Counsel. (D.I. 56, 68.)

Plaintiff also moves for appointment of an expert witness. Rule 706 provides that the trial judge has broad discretion to appoint an independent expert answerable to the court, whether sua sponte or on the motion of a party. Ford v. Mercer County Corr. Ctr., Nos. 03-3758, 03-4524, 2006 WL 714674, at *4 (3d Cir. Mar.22, 2006). The policy behind the rule is to promote the jury's factfinding ability. Id. (citations omitted). See Ledford v. Sullivan, 105 F.3d 354, 359-60 (7th Cir. 1997) (jury could comprehend whether plaintiff's medical needs were "serious" without the aid of a court-appointed expert). At this stage of the proceedings it is not clear that expert testimony is necessary. Therefore, the Court will deny the motion without prejudice the Motion To Appoint An Expert Witness. (D.I. 56, 68.)

The March 25, 2007 appears to seek injunctive relief in the form of medical care and treatment. (D.I. 68.) Plaintiff states that he has pain, is no longer in the infirmary, but is in "the hole" and is "sicker now." Plaintiff also appears to seek injunctive relief in his March 26, 2007 Letter/Motion. (D.I. 70.) Plaintiff states that he asked to go to the infirmary and

was "left in pain." By letter dated April 15, 2007, Plaintiff advised the Court of his recent transfer to the SCI. Accordingly, his requests for medical treatment at the HRYCI, an institution where he is no longer housed, are moot.

**IV. CONCLUSION**

The Court will grant Warden Williams' Motion To Dismiss and will deny CMS' Motion To Dismiss. (D.I. 29, 33.) The Court will gant Plaintiff' Motion To Amend the ad damnum clause and Motion To Amend the Complaint to add new Defendants. (D.I. 60.) The Court will deny Plaintiff's Motions To Transfer and For Classification Change. (D.I. 57, 62, 66.) The Court will deny without prejudice Plaintiff's Motions For Appointment Of Counsel And For A Court Appointed Expert. (D.I. 56, 68.) Finally, the Court will order deny as moot Plaintiff's Letters/Motions (D.I. 68, 70) seeking medical treatment. An appropriate order will be entered.