**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **DAVID DEJESUS,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **Civ. No: 06-209 JJF** |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **WARDEN RAPHAEL WILLIAMS, et al.,** | : | |
| | : | |
| **Defendant(s)** | : | |

**OPPOSITION OF DEFENDANTS, DANA BAKER AND WILLIAM JOYCE, TO
PLAINTIFF'S MOTION FOR ENLARGEMENT OF TIME IN WHICH TO
EFFECTUATE SERVICE AND MOTION TO AMEND CAPTION**

In opposition to plaintiff's Motion for an Enlargement of Time in Which to Effectuate Service and Motion to Amend Caption, defendants, William Joyce and Dana Baker, through their undersigned counsel, hereby respectfully request this Honorable Court to enter the attached Order, denying Plaintiff's Motion for Enlargement of Time in Which to Effectuate Service and, in support thereof, aver as follows:

1.      Plaintiff filed a Complaint in this matter on March 30, 2006 against Raphael Williams and Correctional Medical Services, Inc. ("CMS") alleging violations of his Eighth Amendment Rights under 42 U.S.C. §1983.  (D.I. 2)

2.      On June 13, 2006, the Court dismissed Plaintiff's Complaint without prejudice, but granted Plaintiff 30 days in which to amend the Complaint.  (D.I. 8)

3.      On July 14, 2006, Plaintiff filed an Amended Complaint naming Dana Baker, William Joyce, Raphael Williams and CMS as Defendants.  (D.I. 10)

4.      On July 21, 2006, The Court Ordered Plaintiff to return USM 285 forms for service by the U.S. Marshal upon Defendants.  (D.I. 11).

5.    On August 1, 2006, the USM 285 Forms were returned by Plaintiff to the Court. However, on August 2, 2006, the Court informed Plaintiff he needed to provide service copies of the Complaints with exhibits.  (D.I. 13).

6.    On August 10, 2006, the Clerk of Court forwarded to the U.S. Marshal copies of the Amended Complaint, Service Order, Filing Fee Order, Magistrate Consent Notice and USM 285 forms for service upon Defendants, CMS, Raphael Williams, Dana Baker and William Joyce.

7.    On November 30, 2006, USM 285 forms were returned unexecuted as to Dana Baker and William Joyce.  (D.I. 39 and 40).

8.    No further attempts were made by Plaintiff to serve Dana Baker or William Joyce after the USM 285 Forms were returned unexecuted on November 30, 2006.  However, since November 30, 2006, Plaintiff has filed two Motions for Injunctive Relief (D.I. 41 and 42), Motion to Amend/Correct Complaint (D.I. 78), and sent approximately twenty-four letters to either the Clerk or the Court (D.I. 45, 47, 52-54, 56-57, 60, 61-63, 66, 68-70, 72, 76-77, 80-82, 84, 86-89, 92-94, 96-97).  Contrary to what Plaintiff asserts, these are clearly not the actions of someone who does not understand English or was incapable of effecting service upon the defendants.

9.    If service is not made upon a defendant within 120 days after the filing of the complaint, the court shall dismiss the case as to the defendant(s) which were not served, either own its own initiative or by motion.  Only upon a showing of good cause shall the court extend the time for service.  Fed. R. Civ. P. 4(m); <u>Sykes v. Blockbuster Video</u>, 205 Fed. Appx. 961 (D. Del. 2006) (Attached as Exhibit "1"); <u>Daniels v. Ivens</u>, 380 F. Supp. 2d 379, 384 (D. Del. 2005), <u>aff'd</u> 174 Fed. Appx. 655 (3d. Cir. 2006)( (Attached as Exhibit "2").  Ignorance of the Rules does

not constitute good cause regardless of whether Plaintiff is represented or not.  Sykes, 205 Fed. Appx. at 963 (citing Kersh v. Derozier, 851 F.2d 1509, 1512 (5th Cir. 1998).

10.     In Sykes, The Court dismissed Plaintiff's Complaint when he failed to serve defendants within the 120 day period allotted by Rule 4(m) of file a Motion to Enlarge Time. 205 Fed. Appx. at 963.

11.     In Daniels, just as in this case, Plaintiff filed his Complaint, was provided U.S. Marshall 285 Forms for all Defendants, completed the forms and returned them to the Court for service upon the Defendants, the forms were returned unexecuted as to two defendants and Plaintiff took no further action to locate the defendants or effect service upon them. Daniels, 380 F. Supp. 2d 379.

12.     As in Daniels and Sykes, Plaintiff failed to serve Defendants, Dana Baker and William Joyce, within the 120 days allotted by Rule 4(m).  Just as in Daniels, Plaintiff in this case was provided U.S. Marshall 285 forms, completed the forms and returned them to the Court for service upon the Defendants, there forms were returned unexecuted as to William Joyce and Dana Baker and Plaintiff took no further action to locate the Defendants or effect service upon them.  In fact, it was not until the filing of this Motion, over one year after the U.S. Marshal forms were returned unexecuted that Plaintiff that he even requested an extension of time. However, this did not prevent him from filing Motions for Injunctive Relief, a Motion to Amend/ Correct Complaint and approximately twenty-four letters either to the Clerk or the Court.

13.     Plaintiff relies upon Graham v. Satkoski, 51 F.3d 710, for the proposition that it is incumbent upon the U.S. Marshal to locate the new address for a Defendant and effectuate service even, as in this case, Defendant provides an address.  In Graham, the Plaintiff was trying to serve a prison employee, not the employee of a private company.  That scenario is

distinguishable from this case in which Plaintiff is trying to serve an employee of a private company who contracts to perform services at the prison. In addition, Plaintiff's sole support for his argument that the U.S. Marshal should take further steps <u>sua</u> <u>sponte</u> is that sufficient information was provided to the U.S. Marshal and the U.S. Marshal could have located the Defendants within reasonable efforts. However, <u>Graham</u> is a Seventh Circuit Court of Appeals case and The Third Circuit Court of Appeals has not adopted this requirement, nor do the rules of the Court require the U.S. Marshal to incur its own costs to perform investigatory work and try and locate additional information about the people/entities whom Plaintiff is trying to serve. In addition, no facts are provided in Plaintiff's Motion to indicate the U.S. Marshal did not under take reasonable efforts. Plaintiff's argument is result driven in that because Dana Baker and William Joyce were not served, the U.S. Marshal must not have taken extra steps. Furthermore, Plaintiff indicates sufficient information was provided; however, the only facts provided were that Plaintiff tried to serve Dana Baker and William Joyce at HRYCI.

14.    The 285 Forms were returned, as Plaintiff indicates in his Motion, because William Joyce and Dana Baker were "no longer at HRYCI." This result placed Plaintiff on notice that the information that he provided to the U.S. Marshal was not correct. At that time, he had sufficient time either to take additional steps to locate Dana Baker and/or William Joyce or request an extension of time from the Court, neither of which he did. Once the summonses were returned unexecuted, Plaintiff under took no additional efforts to serve Defendants within the 120 days required under Rule 4(m).

15.    Approximately fourteen (14) months have elapsed since Plaintiff took any steps to effectuate service upon Dana Baker and William Joyce. Plaintiff voluntarily chose to file Motions for Injunctive Relief, to Amend/Correct the Complaint and a multitude of letters to the

Court, rather than serve Dana Baker or William Joyce. These activities do not constitute good cause. In addition, granting Plaintiff's Motion would prejudice Dana Baker and William Joyce in their defense of this case. It has been almost two (2) years since Plaintiff instituted this suit and neither Dana Baker or William Joyce are aware of its existence, and thus have not been able to prepare a defense or retain information, documentary or otherwise, that may have aided in their defense.

Wherefore, Defendants, William Joyce and Dana Baker, respectfully request that the Court deny Plaintiff's Motion for Enlargement of Time in Which to Effectuate Service.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY:    /s/ERIC SCOTT THOMPSON
KEVIN J. CONNORS, ESQ. (#2137)
ERIC SCOTT THOMPSON, ESQ. (#4633)
1220 N. Market St., 5th Fl.
P.O. Box 8888
Wilmington, DE 19899-8888
Attorneys for Defendants, William Joyce
and Dana Baker

DATED:    February 14, 2008

15/580844.v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served upon all persons listed below two true and correct

copies of the **OPPOSITION OF DEFENDANTS, DANA BAKER AND WILLIAM JOYCE,**

**TO PLAINTIFF'S MOTION FOR ENLARGEMENT OF TIME IN WHICH TO**

**EFFECTUATE SERVICE AND MOTION TO AMEND CAPTION** in the above-captioned

matter this date by regular first-class mail to:

David A. Felice, Esquire
Cozen O'Connor
1201 North Market Street
Suite 1400
Wilmington, DE 19801

                                        MARSHALL, DENNEHEY, WARNER,
                                        COLEMAN & GOGGIN

                        BY:    /s/ERIC SCOTT THOMPSON
                               KEVIN J. CONNORS, ESQ. (#2137)
                               ERIC SCOTT THOMPSON, ESQ. (#4633)
                               1220 N. Market St., 5th Fl.
                               P.O. Box 8888
                               Wilmington, DE  19899-8888
                               Attorneys for Defendants, William Joyce
                               and Dana Baker

DATED:        February 14, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **DAVID DEJESUS,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **Civ. No: 06-209 JJF** |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **WARDEN RAPHAEL WILLIAMS, et al.,** | : | |
| | : | |
| **Defendant(s)** | : | |

## <u>ORDER</u>

AND NOW the Court, having heard and considered Plaintiff's Motion for Enlargement of Time in Which to Effectuate Service and the Response of Defendants, Dana Baker and William Joyce, thereto, does hereby FIND and ORDER:

Plaintiff's Motion for an Enlargement of Time in Which to Effectuate Service is hereby denied.

SO ORDERED this _____ day of _____, 2008.

_____
J.

15/582597.v1



9 of 176 DOCUMENTS

**CLIFFORD D. SYKES, Appellant v. BLOCKBUSTER VIDEO; VIACOM**

**No. 06-1745**

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

*205 Fed. Appx. 961; 2006 U.S. App. LEXIS 28424*

**November 15, 2006, Submitted Under Third Circuit LAR 34.1(a)**
**November 15, 2006, Filed**

**NOTICE:** [**1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** On Appeal from the United States District Court for the District of New Jersey. (D.C. No. 04-cv-06260). District Judge: Honorable Dennis M. Cavanaugh.
*Sykes v. Blockbuster Inc., 2006 U.S. Dist. LEXIS 4720 (D.N.J., Feb. 2, 2006)*

**COUNSEL:** CLIFFORD D. SYKES, Appellant, Pro se, Edgewood, MD.

For BLOCKBUSTER VIDEO; VIACOM, Appellees: Eric S. Lasky, Morgan, Lewis & Bockius, Princeton, NJ.

**JUDGES:** Before: FISHER, ALDISERT and WEIS, Circuit Judges.

**OPINION**

[*962] PER CURIAM

Clifford D. Sykes appeals the order of the United States District Court for the District of New Jersey dismissing his Title VII complaint against Blockbuster Video and Viacom. The court dismissed his complaint because he failed to serve the defendants within the 120-day period required under *Federal Rule of Civil Procedure 4(m)*. We will affirm.

Sykes filed his complaint in the District Court on December 21, 2004, with an application to proceed *in forma pauperis*. The District Court granted Sykes' application, ordered the clerk to issue summonses, and directed Sykes to serve each defendant with [**2] the summons and complaint in accordance with *Fed. R. Civ. P. 4*. The District Court clerk issued the summonses on January 13, 2005, but apparently, Sykes never received the mailed summonses because he had moved. (He filed a notice of change of address with the Court on March 28, 2005.) In his notice of appeal, he states that he nonetheless picked up the summonses in person "from the court clerk in February 2005."

Since he filed his complaint on December 21, the 120-day period would have expired on April 20, 2005. Sykes served Blockbuster with a copy of the summons (but apparently not a copy of the complaint) on May 16, 2005, which was 26 days beyond the *Rule 4(m)* deadline. He served Viacom on August 25, 2005, four months after the deadline. Blockbuster and Viacom filed motions to dismiss the actions based on Sykes's failure to effect proper service.

*Fed. R. Civ. P. 4(m)* provides that if service of the summons and complaint is not made within 120 days after the filing of the complaint, the court "shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specific [**3] time." *Id.* If the plaintiff shows good cause for the failure, the court shall extend the time for service. *Id.* Generally, we have plenary review over issues concerning the propriety of service under *Rule 4. McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 194 (3d Cir. 1998) (citing Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 481 (3d Cir. 1993))*. We review decisions of whether good cause exists to extend the 120-day period under *Rule 4(m)* under an abuse of discretion standard. *Ayres v. Jacobs & Crumplar, P.A., 99 F.3d 565, 570 n.4*

*(3d Cir. 1996).*

[*963] Here, Sykes clearly failed to serve appellee Viacom within 120 days of filing his complaint, as required under *Rule 4(m)*. It is also clear that he failed to serve appellee Blockbuster within the 120-day period. [1] Under *Rule 4(m)*, unless there was some good cause for Sykes' failure to comply with the rule, the District Court was compelled to dismiss the action. *See id.*

> 1  This is true, regardless of the time-frame used to calculate the 120-day period under *Rule 4(m)* here. Sykes argues in a document construed as his Reply Brief that, for purposes of *Rule 4(m)*, the 120 days should be calculated from January 13, 2005, the date that the District Court filed the January 4, 2005 order granting him *in forma pauperis* status. Setting aside for the moment that this belated argument was not presented to the District Court in the first instance and we will not entertain it, we would point out that this argument would only minimize the number of days that he tardily served the complaint; it would not cure his failure altogether to serve the complaint in accordance with the 120-day period under *Rule 4(m)*.

[**4] Sykes never responded to the defendants' motions to dismiss, [2] nor did he ever file a motion to enlarge the time for serving the defendants under *Rule 4(m)*. The District Court appropriately granted the unopposed motions to dismiss, after determining that there was not good cause for the failure to comply with *Rule 4* under the facts then were before the court.

> 2  Sykes submitted a letter to the District Court approximately five weeks after Blockbuster filed its motion to dismiss, but that letter did not respond to the motion to dismiss, and instead provided additional information regarding the substance of his Title VII allegations.

It is only on appeal that Sykes has attempted to explain why he did not comply with the federal rules for service, but once again, his explanations have come too late because he never gave the District Court the opportunity to consider them. *See Harris v. Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994)* (explaining that this court will not consider issues raised for [**5] the first time on appeal). [3] They are meritless, in any event. In his notice of appeal, Sykes claims that he did not receive a

copy of the January 4, 2005 order directing him to serve the papers in accordance with *Rule 4*. However, a litigant's compliance with the Federal Rules of Civil Procedure is expected whenever he or she files a lawsuit in federal court. That Sykes did or did not receive the District Court's January 2005 order which directed him to comply with *Rule 4* is irrelevant; he was still expected to comply with the rules of procedure, as are all litigants, whether they are represented by counsel or not. The District Court correctly found that Sykes's ignorance of the rules would not provide good cause to excuse his failure to serve the defendants within the time allotted under the rules. *See Kersh v. Derozier, 851 F.2d 1509, 1512 (5th Cir. 1998)* (pro se plaintiff's ignorance of service rules does not constitute good cause); *cf. Lovelace v. Acme Markets, Inc., 820 F.2d 81, 84 (3d Cir. 1987)* (inadvertence of counsel does not constitute good cause for failure to timely serve defendants under former *Rule 4(j)*).

> 3  Sykes does not make any arguments with respect to the timeliness of service on Viacom in his brief on appeal.

[**6] In his appellate brief, Sykes also claims that the summonses were reissued on March 18, 2005, presumably arguing that the 120-day period should have been measured from that date. (This is apparently an alternative argument to his claim that he picked up the summonses by hand in February 2005.) His contention that the 120-day deadline should have commenced when the summonses were reissued [*964] in March, apparently at his request, fails once again because the rule specifies that the 120-day period begin when the plaintiff files the complaint-not when summonses are issued.

Finally, Sykes maintains that his non-compliance with the rules was not deliberate, but merely a product of his not having a permanent address during the pertinent time. We recognize that Sykes apparently had difficulty receiving mail because he did not have a permanent address during the relevant period of 2005, but this situation has no bearing on the issue here. By his own admission, Sykes picked up the summonses by hand in February 2005, which was well before the April 20 deadline. *See* Sykes's Notice of Appeal. We would also note that Sykes could have avoided the problem by notifying the District Court with his [**7] new addresses in a timely fashion.

We will affirm the District Court's February 3, 2006

205 Fed. Appx. 961, *964; 2006 U.S. App. LEXIS 28424, **7

order dismissing Sykes's action without prejudice. [4]

> [4] In July, after the case had been briefed, Sykes filed a document termed as a "Motion to Reject Motion of Appellees to Dismiss," which was construed as his Reply Brief. No action will be taken on Appellees' "Opposition" filed in response to that Reply Brief. The Federal Rules of Appellate Procedure do not provide for the filing of an "opposition" to a reply brief.



LEXSEE

**ROLAND WILLIAM DANIELS, Plaintiff, v. CORRECTIONAL MEDICAL SERVICES, INC., DR. KEITH IVENS, and NURSE DOTTIE, Defendants.**

**Civ. No. 03-085-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*380 F. Supp. 2d 379; 2005 U.S. Dist. LEXIS 15847*

**August 4, 2005, Decided**
**August 4, 2005, Filed**

**SUBSEQUENT HISTORY:** Affirmed by Daniels v. Corr. Med. Serv., 2006 U.S. App. LEXIS 6288 (3d Cir. Del., Mar. 14, 2006)

**COUNSEL:** [**1] Roland Williams Daniels, Delaware Correctional Center, Smyrna, Delaware.

Kevin J. Connors, Esquire of Marshall, Dennehey, Warner, Coleman and Goggin, Wilmington, Delaware, for Defendants.

For Roland William Daniels, Plaintiff, Pro se, Delaware Correctional Center, Smyrna, DE.

For Correctional Medical Service, Dr. Keith Ivens, Nurse Dottie, Defendants: Kevin J. Connors, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, DE.

**JUDGES:** ROBINSON, Chief Judge.

**OPINION BY:** Sue L. Robinson

**OPINION**

[*381] **MEMORANDUM OPINION**

Dated: August 4, 2005

Wilmington, Delaware

Sue L. Robinson

**ROBINSON, Chief Judge**

**I. INTRODUCTION**

On January 16, 2003, plaintiff, an inmate incarcerated at Delaware Correctional Center ("DCC") in Smyrna, Delaware, [*382] filed this action under *42 U.S.C. § 1983* alleging defendants violated his *Eight Amendment* right. (D.I. 2) Plaintiff's case has been closed and reopened twice since this time, the most recent reopening on October 16, 2003. Waiver of service was received from defendant Correctional Medical Services ("CMS") on June 8, 2004. The summons, United States Marshal 285 forms ("285 forms"), issued for defendants Dr. [**2] Keith Ivens and Nurse Dottie were returned, unexecuted, on June 22, 2004. Neither Dr. Ivens nor Nurse Dottie were still employed by CMS at the time service was attempted, and the United States Marshal's Service was unable to locate them with the information provided by plaintiff. (D.I. 20, 21) Discovery concluded on November 15, 2004.

The court has jurisdiction over this suit pursuant to *28 U.S.C. § 1331*. Currently before the court are plaintiff's four motions for representation by counsel (D.I. 30, 34, 41, 47), defendants Dr. Ivens and Nurse Dottie's motion to dismiss for insufficient service (D.I. 43), and defendant CMS's motion for summary judgment. (D.I. 38)

**II. BACKGROUND**

In 1983, plaintiff was admitted to DCC; it was noted in his admission records that he had occasional stomach pain and prostate problems.[1] (D.I. 38, Ex. D) From 1998 through 1999, plaintiff was seen by a physician a total of fifteen times (id.) and he was repeatedly prescribed

380 F. Supp. 2d 379, *382; 2005 U.S. Dist. LEXIS 15847, **2

Tagament, Titralac, Mylicon and/or Bentyl. (Id.) An x-ray of his abdomen in 1998 did not show any evidence of a bowel obstruction. (Ex. Q) On December 3, 1999, plaintiff submitted a "sick call [**3] slip" stating that he was "having trouble urinating and [was] passing blood through [his]) bowels . . . also having trouble digesting food." (Id.) Plaintiff was subsequently examined on December 3. (Id.)

    1   Plaintiff was diagnosed with an enlarged prostrate that was treated with Minipress. (D.I. 33, Ex. D)

Plaintiff was seen by a physician four more times before October 18, 2000, when he submitted a sick call slip stating that he had a stomach virus. [2] (Id., Ex. E) On October 29, plaintiff was examined by a physician and had "no complaints." (Id., Ex. F) On November 8, 2000, plaintiff submitted a sick call slip stating that he was "very sick" and could not "digest foods." (Id.) In this call slip, plaintiff asserted that this was the last request he would make before "writing letters and making phone calls." (Id.) Plaintiff was subsequently examined, but the diagnosis is illegible. On November 15, 2000, plaintiff was complaining of nausea after eating and inability to have a bowel [**4] movement. (Id., Ex. H) Two days later plaintiff's blood was drawn for "labs." (Id.) On December 8, 2000, an ultrasound of plaintiff's abdomen was taken; everything appeared normal. [3] (Id., Ex. I) On January 16, 2001, plaintiff requested that his prescription be renewed; at this time, plaintiff did not indicate any discomfort or concerns. (Id., Ex. J) Plaintiff alleges that during the month of January 2001, his condition worsened to such a point that he was unable to eat. (D.I. 2) On January 25, an EKG was done and plaintiff's blood was drawn again. (D.I. 33, Ex. J) On January 31, 2001, plaintiff was diagnosed with possible appendicitis. [*383] (Id.) According to plaintiff, this is the day his appendix ruptured. (D.I. 2) The next day plaintiff was sent to St. Francis where he underwent an appendectomy. (D.I. 44)

    2   Plaintiff alleges that he submitted a sick call slip on or about October 30, 2000, complaining of an ongoing stomach problem. (D.I. 2) It is not clear whether this is the sick call slip he was referring to or not.
    3   Plaintiff contends that from October to December, he put in numerous sick call slips, one of which resulted in an examination by defendant

Nurse Dottie who allegedly told him nothing was wrong with him and another indicated that plaintiff would receive further testing.

[**5] Dr. Mammen, plaintiff's surgeon, noted that plaintiff was "ill-looking," "febrile" and possibly dehydrated upon arriving at St. Francis. (Id.) St. Francis diagnosed plaintiff as having "severe acute transmural appendicitis" or "gangrenous appendicitis." (Id.) Plaintiff alleges that he subsequently had a second operation to remove part of his large intestine which had become infected after his appendix ruptured, as well as a third operation to remove peritonitis (caused by the ruptured appendix) from his stomach. (Id.) The medical records from St. Francis indicate that ten days after the initial surgery, plaintiff underwent a second abdominal surgery. (Id.)

Plaintiff returned to DCC from St. Francis on March 8, 2001; he had no complaints of pain, his sutures were still intact and did not appear to be infected. (D.I. 38, Ex. K) By March 12, 2001, despite complaints of "gas build up," plaintiff was requesting to be discharged from the infirmary, back into the general population; plaintiff was kept in the infirmary until approximately March 15. (Id., Ex. L) He was examined by doctors again on March 19. (Id.) On March 29, plaintiff submitted a sick call slip complaining [**6] of pain in his surgical incision. [4] (Id., Ex. M) On April 23, plaintiff had an annual medical examination, during which he denied having a hernia and his abdomen was not examined. (Id.) On May 28, 2001, plaintiff submitted another sick call slip with complaints unrelated to his medical incision. (Id.) On June 21, however, plaintiff submitted a slip asserting that he was having trouble with the incision. ( Id., Ex. N) Upon examination, it was noted that plaintiff's umbilicus bulged when he tensed his abdomen; the examiner requested approval for plaintiff to have a hernia belt and advised him not to strain. (Id.) On July 16, 2001, plaintiff submitted another sick call slip stating that his intestines were protruding through his incision, and that the incision was getting larger. (Id.) Upon examination, plaintiff was referred for a consultation with a surgeon to determine if surgery was necessary. (Id.) Plaintiff was also diagnosed with an incisional hernia and prescribed a hernia belt to start reducing it; he refused the hernia belt. (Id.) On August 16, plaintiff submitted another sick call slip complaining that his hernia was getting worse; on July 26, [**7] he was told he would be scheduled for surgery. (Id., Ex. O) The examining physician indicated

Page 3

380 F. Supp. 2d 379, *383; 2005 U.S. Dist. LEXIS 15847, **7

that the hernia was large, but reducible. (Id.) Plaintiff saw a surgeon, Dr. Mammen, on September 27, 2001. (Id.) Sometime before October 10, plaintiff was tentatively scheduled for surgery with Dr. Mammen. [5] He eventually had reparative surgery and returned to DDC on November 27, 2001. (D.I. 33, Ex. P)

> 4  Based on the record, it is not clear whether this complaint ever resulted in an examination.
>
> 5  Plaintiff's surgery had to be approved. (Id., Ex. O)

## III.  MOTIONS  FOR  APPOINTMENT  OF COUNSEL

Plaintiff, a pro se litigant proceeding in forma pauperis, has no constitutional or statutory right to representation by counsel. *See Ray v. Robinson, 640 F.2d 474, 477 (3d Cir. 1981); Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).* The "decision to appoint counsel may be made at any point in the litigation, and may be made by a district court [**8] sua sponte. " *Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002).*

[*384] It is within the court's discretion, however, to seek representation by counsel for plaintiff, but this effort is made only "upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting . . . from [plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984);* accord *Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993)* (representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law). After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel, including:

> (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;

> (4) the plaintiff's capacity to [**9] retain counsel on his own behalf; (5) the extent to which a case is likely to turn on

> credibility determinations; and

> (6) whether the case will require testimony from expert witnesses.

*Tabron, 6 F.3d at 155-57;* accord *Parham, 126 F.3d at 457; Montgomery v. Pinchak, 294 F.3d at 499.*

In this case, plaintiff has shown that he is able to articulate the alleged facts clearly. Plaintiff's allegations coincide with the records provided by CMS and St. Francis; the issue in this case is predominately a legal one and will not be decided by credibility determinations. Plaintiff was able to undertake his own factual inquiry and obtain his medical records from St. Francis Hospital. Plaintiff's case will most likely not require expert testimony. For these reasons, plaintiff's motions for appointment of counsel are denied.

## IV.  MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS

Defendants Dr. Ivens and Nurse Dottie, through their joint counsel with CMS, have moved to dismiss plaintiff's complaint because they have not been served properly. Plaintiff contends that he tried to serve both defendants, but is unable to locate them. [**10] Plaintiff further contends that defendant CMS could locate them and serve the complaint upon them.

Pursuant to *Federal Rule of Civil Procedure 4 (m)*, plaintiff has 120 days from the date he filed his complaint to serve the complaint on defendants. Upon a showing of good cause for the failure to serve, the court must extend the time for service; the court can, at it discretion, extend the time for service even if plaintiff has not shown good cause for the delay. *Fed. R. Civ. P. 4(m).*

Plaintiff's complaint was filed January 16, 2003. On November 13, 2003, the court ordered plaintiff to submit U.S. Marshal 285 forms for all defendants within 120 days of the order. (D.I. 11) Plaintiff submitted the required forms but, because defendants Dr. Ivens and Nurse Dottie were no longer employed by CMS, the U.S. Marshal's Service was unable to serve them and the 285 forms were returned unexecuted. (D.I. 20, 21) Plaintiff has made no further attempts to serve defendants Dr. Ivens or Nurse Dottie or to obtain their addresses; therefore, the motion to dismiss is granted. [6]

> 6  Extending the time in which plaintiff could

Page 4

380 F. Supp. 2d 379, *384; 2005 U.S. Dist. LEXIS 15847, **10

serve these defendants would be of no avail. As stated below, plaintiff's allegations fail on the merits, as he has not put forth sufficient evidence to show a material issue of disputed fact with respect to his claims that defendants were deliberately indifferent.

[**11] [*385] **V. MOTION FOR SUMMARY JUDGMENT**

Defendant CMS contends that plaintiff has failed to provide evidence that it was deliberately indifferent to his medical needs, or that any indifference was the result of a policy or custom for which it can be liable. (D.I. 38) Plaintiff argues that defendant was indifferent because "a simple blood or urine test would have shown" that he had appendicitis, but defendant failed to give him these tests and, as a result, he is suffering and chronically ill. [7] (D.I. 39)

> 7 In his response, plaintiff also asserted that he had not yet been able to obtain his medical records from St. Francis, which he thought would evidence the operations he underwent as a result of defendant's deliberate indifference. (D.I. 39) Since filing his response, plaintiff has obtained and filed a copy of those medical records and the records were subsequently considered by the court. (D.I. 44)

**A. Standard Of Review**

A court shall grant summary judgment only if "the pleadings, depositions, answers [**12] to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. The moving party bears the burden of proving that no genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)* (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'"

*Matsushita, 475 U.S. at 587* (quoting *Fed. R. Civ. P. 56(e)*). The court will "view the underlying facts and all reasonable inferences [**13] therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995)*. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*.

**B. Discussion**

To state a violation of the *Eighth Amendment* right to adequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)*; accord *White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990)*. Plaintiff must demonstrate: (1) that he had a serious medical need; and (2) that [**14] the defendant was aware of this need and was deliberately indifferent to it. See *West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978)*; see also *Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987)*.

The seriousness of a medical need may be demonstrated by showing [*386] that the need is "'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)* (quoting *Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J.1979)*). Moreover, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." Id.

As to the second requirement, an official's denial of an inmate's reasonable requests for medical treatment constitutes deliberate indifference if such denial subjects the inmate to undue suffering or a threat of tangible residual injury. *Monmouth County Corr. Inst. Inmates, 834 F. Supp. at 346*. Deliberate indifference may also be

380 F. Supp. 2d 379, *386; 2005 U.S. Dist. LEXIS 15847, **14

present if necessary medical treatment [**15] is delayed for a non-medical reason, or if an official bars access to a physician capable of evaluating a prisoner's need for medical treatment. *Id. at 347*. However, an official's conduct does not constitute deliberate indifference unless it is accompanied by the requisite mental state. Either actual intent or recklessness will afford an adequate basis to show deliberate indifference. See *Estelle, 429 U.S. at 105*. While a plaintiff must allege that the official was subjectively aware of the requisite risk, he may demonstrate that the official had knowledge of the risk through circumstantial evidence and "a fact finder may conclude that an . . . official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan, 511 U.S. 825, 842, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994)*.

The law is clear that mere medical malpractice is insufficient to present a constitutional violation. See *Estelle, 429 U.S. at 106; Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993)*. Prison authorities are given extensive liberty in the treatment of prisoners. See *Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)*; [**16] see also *White, 897 F.2d at 110* ("Certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness.") (emphasis in original).

In this case, plaintiff has failed to provide evidence that defendants knew of plaintiff's appendicitis and were deliberately indifferent to his needs or point to a disputed issue of material fact with respect to these issues. [8] The record shows that, at the times in question, it may not have been obvious that the plaintiff had a serious medical condition. Plaintiff regularly had stomach problems and was regularly examined by CMS staff. His stomach problems were treated with medication and abdominal examinations. There is no evidence that plaintiff was prevented from obtaining healthcare, or that his complaints of pain were not taken seriously. Although ultimately plaintiff was diagnosed with appendicitis, there is no evidence that, prior to the diagnosis and his transfer to St. Francis, it was obvious to the defendants that plaintiff was suffering from something more serious than his usual stomach problems. When it did become evident [**17] that plaintiff had appendicitis, a serious medical condition, he was examined by CMS and transferred to St. Francis for surgery.

[8] Because the court is granting defendant CMS's motion for summary judgment on these grounds, it does not consider whether plaintiff has sufficiently alleged or proven that the alleged deliberate indifference was caused by a custom or policy.

Upon returning from St. Francis, plaintiff was kept in the infirmary for approximately two weeks, during which time he did not complain of any pain or problems [*387] with the surgical incision. When the incision began to bother him, there is no evidence to suggest he was not provided medical care. Plaintiff was examined on numerous occasions after he started complaining about his incision and the record shows that his pain subsided. When he was diagnosed with a hernia, he was given a hernia belt, which he refused to use. When his hernia did not improve, he was approved for corrective surgery. Furthermore, the evidence shows that once defendants received [**18] notice that plaintiff needed surgery, he received it and supplemental care from defendants.

## VI. CONCLUSION

For the reasons stated, plaintiff's motions for appointment of counsel are denied. (D.I. 30, 34, 41, 47) Defendants Dr. Ivens and Nurse Dottie's motion to dismiss is granted. (D.I. 43) Defendant CMS's motion for summary judgment is granted. (D.I. 38)

## ORDER

At Wilmington this 4th day of August, 2005, consistent with the memorandum opinion that issued this same date;

IT IS ORDERED that:

1. Plaintiff's motions for appointment of counsel (D.I. 30, 34, 41, 47) are denied.

2. Defendants Dr. Iven's and Nurse Dottie's motion to dismiss (D.I. 43) is granted.

3. Defendant CMS's motion for summary judgment (D.I. 38) is granted.

4. The Clerk of Court is directed to enter judgment for defendant CMS and against plaintiff.

Sue L. Robinson

380 F. Supp. 2d 379, *387; 2005 U.S. Dist. LEXIS 15847, **18

United States District Judge

**ROLAND WILLIAM DANIELS, Appellant v. CORRECTIONAL MEDICAL SERVICE; DR. KEITH IVENS; NURSE DOTTIE**

**NO. 05-4027**

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

*174 Fed. Appx. 655; 2006 U.S. App. LEXIS 6288*

**February 16, 2006, Submitted For Possible Dismissal Under 28 U.S.C. § 1915(e)(2)(B) or Summary Action Under Third Circuit LAR 27.4 and I.O.P. 10.6 March 14, 2006, Filed**

**NOTICE:**    [*1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:**    On Appeal From the United States District Court For the District of Delaware. (D.C. Civ. No. 03-cv-00085). District Judge: Honorable Sue L. Robinson.
*Daniels v. Corr. Med. Servs., 380 F. Supp. 2d 379, 2005 U.S. Dist. LEXIS 15847 (D. Del., 2005)*

**COUNSEL:**    ROLAND    WILLIAM    DANIELS, Appellant, Pro se, Smyrna, DE.

For CORR MED SER, KEITH IVENS, DOTTIE, Appellees: Kevin J. Connors, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, DE.

**JUDGES:** Before: BARRY, SMITH AND NYGAARD, CIRCUIT JUDGES.

**OPINION**

PER CURIAM

Roland Daniels appeals the District Court's order granting appellees' motion to dismiss and appellees' motion for summary judgment. The procedural history of this case and the details of Daniels's claims are well-known to the parties, set forth in the District Court's thorough opinion, and need not be discussed at length. Briefly, Daniels alleged that appellees denied him proper medical treatment for stomach pain and this led to months of suffering after his appendix burst. The District Court granted appellees' motions to dismiss and for summary judgment, and Daniels filed a timely notice of appeal.

[*2] We have jurisdiction under *28 U.S.C. § 1291.* We review a dismissal pursuant to *Rule 4(m)* for an abuse of discretion. *See Ayres v. Jacobs & Crumplar, P.A., 99 F.3d 565, 568 (3d Cir. 1996).* We exercise plenary review over the District Court's order granting appellees' motion for summary judgment. *Gallo v. City of Philadelphia, 161 F.3d 217, 221 (3d Cir. 1998).* A grant of summary judgment will be affirmed if our review reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c).* We review the facts in a light most favorable to the party against whom summary judgment was entered. *See Coolspring Stone Supply, Inc. v. American States Life Ins. Co., 10 F.3d 144, 146 (3d Cir. 1993).* In order to state a claim under the *Eighth Amendment* for denial of medical care, Daniels must show that the appellees were deliberately indifferent to his serious medical needs. *Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).* Deliberate indifference can be shown by a prison [*3] official "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id. at 104.* A medical need is serious if it is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.*

174 Fed. Appx. 655; 2006 U.S. App. LEXIS 6288, *3

*1987).*

In its opinion, the District Court thoroughly summarizes the history of the medical care Daniels received for his complaints. We have nothing to add to its summary or analysis. We agree with the District Court that appellees were not deliberately indifferent to Daniels's medical needs. The District Court did not abuse its discretion in dismissing the complaint as to Dr. Ivens

and Nurse Dottie for failure to serve.

Summary action is appropriate if there is no substantial question presented in the appeal. *See* Third Circuit LAR 27.4. For the above reasons, as well as those set forth by the District Court, we will summarily affirm the District Court's order. *See* Third Circuit I.O.P. 10.6.