IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAVID DEJESUS, SR.,                    )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )    C.A. No. 06-209-JJF
                                       )
CORRECTIONAL MEDICAL SERVICES,         )    TRIAL BY JURY DEMANDED
INC., WILLIAM JOYCE and DANA           )
BAKER,                                 )
                                       )
            Defendants.                )

**PLAINTIFF DAVID DEJESUS, SR.'S**
**EMERGENCY MOTION FOR INJUNCTIVE RELIEF**

Plaintiff David DeJesus, Sr. ("Plaintiff") presents his emergency motion for injunctive

relief.[1]  In support of his emergency motion, Plaintiff states the following:

**Introduction**

1.      Plaintiff is suffering and has suffered from a grape-sized growth on his left

testicle since January 2008.  In spite of numerous sick calls, a grievance and several letters from

his attorney, Defendant Correctional Medical Services, Inc. ("CMS") refuses to evaluate or

provide any treatment whatsoever for Plaintiff's condition.  Instead, CMS shirked its

responsibility to provide medical care to Plaintiff under the mistaken belief that "Plaintiff's

complaints of a lump on or near his testicles [] is not an issue in the pending litigation."  Plaintiff

believes that his condition presents a serious and substantial threat to his health and well-being.

Absent immediate, mandatory injunctive relief from this Court, CMS has stated, both in word

and action, that it will continue its pattern of failure and neglect.  Accordingly, Plaintiff

respectfully requests that his emergency motion for injunctive relief be granted and that a

---

[1] Pursuant to D. Del. LR 7.1.2, Plaintiff reserves his right to file a reply brief in support of his
motion.

mandatory injunction issue requiring CMS or an independent medical provider (at CMS's expense) provide medical care and treatment for Plaintiff's condition.

### Nature and Stage of Proceedings

2.      Plaintiff initiated this action *pro se* on March 30, 2006. (D.I. 1). On June 13, 2006, the Court entered an order dismissing Plaintiff's Complaint without prejudice, but permitting Plaintiff leave to amend the Complaint within thirty (30) days. (D.I. 8). On July 14, 2006, Plaintiff (again, acting *pro se*) filed his Amended Complaint. (D.I. 10).

3.      On September 8, 2006 and October 4, 2006, Plaintiff (still acting *pro se*) filed requests for injunctive relief seeking medical care for a believed liver condition and a request that he not be transferred to the Delaware Correctional Center. (D.I. 19, 26). Plaintiff's motions were ultimately denied by the Court on October 20, 2006. (D.I. 28).[2]

4.      On December 12 and December 22, 2006, Plaintiff again filed motions for injunctive relief requesting a liver biopsy and seeking medical attention after being forced to wait three months to see a doctor (D.I. 41) and requesting mandatory injunctive relief that he be taken to a hospital to receive medical care. (D.I. 42). On February 20, 2007, the Court denied Plaintiff's motions for injunctive relief, noting that "the attachments to the Motion contain nothing to support Plaintiff's [re]quest for medical injunctive relief" and that Plaintiff "has not met his burden to show a likelihood of success on the merits." (D.I. 55).

5.      On April 23, 2007, the Court entered an order granting in part and denying in part Defendant's motion to dismiss Plaintiff's Amended Complaint. (D.I. 74). In its memorandum opinion, the Court recognized that the "gist of [Plaintiff's] allegations [in his Amended

---

[2] Although Plaintiff's expressions of severe pain were not ultimately tied to his liver, the complaints were, nonetheless, legitimate. On September 17, 2007, Plaintiff was forced to undergo an emergency laparoscopic cholecystectomy to remove his gallbladder. (Operative Report attached as Exhibit A). Plaintiff will demonstrate CMS's Eighth Amendment violations regarding these facts at trial.

Complaint are] that [he is] not receiving prompt and proper medical care." (*Id.* at p.1).    In denying CMS's motion to dismiss, the Court found that Plaintiff adequately alleged a policy or custom of ignoring medical complaints and delaying of treatment. (*Id.* at p. 10).

6.    On January 4, 2008, the Court entered an Order recognizing the undersigned's representation of Plaintiff in this litigation.

## Facts

7.    Plaintiff does not engage in a routine of weight training or lift heavy weights of any kind.    Moreover, Plaintiff does not have a job within the prison system, nor is he required to undertake any heavy lifting in my regular day-to-day routine.    These facts are true today and at every point since January 2008.    (D.I. 98).    (Declaration of David DeJesus, Sr., attached as Exhibit B, ¶ 2).

8.    Since mid-January of 2008, Plaintiff has suffered from and continues to suffer from a grape-sized growth in direct proximity to his left testicle (the "condition") accompanied by pain and swelling.    More recently, Plaintiff has developed new symptoms of numbness and tingling sensations in his left leg.    (DeJesus Dec., ¶ 3).

9.    On January 15 or 17, 2008, Plaintiff was evaluated by CMS employees and raised concerns about his condition with his caregivers.    CMS failed or refused to provide any diagnostic review, request any medical history, recommend any non-medical care or treatment or take any action whatsoever in response to Plaintiff's request or in an effort to provide care or treatment for his condition. (*Id.*, at ¶ 4).

10.    Since that time, Plaintiff has made repeated sick call requests that CMS again evaluate his condition, all of which were not granted.  (*Id.*, at ¶ 5).

11.    On March 29, 2008, Plaintiff submitted a grievance regarding CMS's failure to review, diagnose or treat his condition.  (*Id.*, at ¶ 6); (Grievance attached hereto as Exhibit C).

WILMINGTON\77376\1  097343.000

12.    On Friday, April 18, 2008, an appointment was scheduled for Plaintiff to meet with CMS for the first time since his appointment in mid-January 2008.  Plaintiff is informed and believes that the purpose of this April 18, 2008 appointment was not to address his condition but was, instead, an annual physical evaluation.  (DeJesus Dec., ¶ 7).

13.    During this April 18 appointment, Plaintiff expressly informed the attending physician, Dr. McDonald, of his condition.   Dr. McDonald failed to conduct a physical examination of his condition and did not inquire as to any recent history concerning his condition, suggesting instead that Plaintiff use an athletic supporter because he may be suffering from a muscle pull.  (*Id.*, at ¶ 8).

14.    Plaintiff does not believe that his condition is the result of a muscle pull but, rather, that it is an abnormal growth that presents a serious and substantial threat to his health and well-being.  (*Id.*, at ¶ 9).

15.    On April 25, 2008, Plaintiff's March 29, 2008 grievance was adjudicated as "unresolved."  (Resolution attached as Exhibit D).   Nonetheless, the grievance board stated in its denial that Plaintiff should be referred to chronic care.  (*Id.*).   However, in spite of the grievance board's recommendation, Plaintiff has not received any medical care or treatment for his condition.  (DeJesus Dec., ¶ 10).

16.    Plaintiff's counsel first brought this matter to CMS's attention through a letter demand directed to its counsel dated April 3, 2008.  (April 3, 2008 letter attached hereto as Exhibit E).  In the April 3 letter demand, Plaintiff requested that immediate attention be directed to this possibly life-threatening condition.  Receiving no response whatsoever, Plaintiff's counsel addressed a second letter demand for treatment to CMS's counsel on April 11, 2008.  (April 11 letter attached as Exhibit F).

17.     By letter dated April 15, 2008, counsel for CMS acknowledged Plaintiff's April 3, 2008 and April 11, 2008 letters. (April 15 letter attached hereto as Exhibit G). CMS agreed to forward the requests to the appropriate individuals, but refused to commit to setting a date and time for an evaluation of Plaintiff's condition because it was "beyond the scope of the litigation currently pending." (*Id.*).

18.     On April 22, 2008, during a teleconference between Plaintiff and his counsel, CMS's counsel was invited to participate in the teleconference to hear, first-hand, Plaintiff's description of his condition and the pain he was forced to endure. Plaintiff's counsel requested a response to Plaintiff's demand for treatment by the end of that week – April 25, 2008.

19.     On April 25, 2008, CMS responded to Plaintiff's two letter demands and the joint teleconference by denying Plaintiff's request because CMS did not want to "grant favoritism to a prisoner involved in litigation." (April 25 letter attached as Exhibit H). Instead, CMS directed Plaintiff to follow the "[p]rocedures [] put into place for prisoners in the State of Delaware to obtain treatment." (*Id.*). CMS further commented that if Plaintiff "does not believe he is obtaining proper treatment or believes he needs immediate treatment, he can follow the internal procedures to obtain this." (*Id.*).

20.     As described herein (*see supra*, ¶¶ 10-11, 15), Plaintiff placed sick calls and filed the necessary grievance. CMS has failed to grant a single sick call request for Plaintiff's condition. Moreover, the "unresolved" resolution of Plaintiff's grievance is – both in fact and in principle – a denial of his right and necessity for immediate medical care and treatment for his condition.

21.     Given the facts alleged in this litigation and CMS's continued failure or refusal to respond to Plaintiff's sick calls, Plaintiff does not believe that the further placement of sick calls

or grievances will provide the level of treatment or care presently required by his condition. (DeJesus Dec., ¶ 11).

22.    Plaintiff requests that CMS or an independent medical provider provide an immediate review, diagnosis and treatment for his condition. (*Id.* at ¶ 12).

**Argument**

23.    Plaintiff's request for emergency injunctive relief should be granted given the high likelihood of success on the merits of his claim and the serious medical condition from which he presently suffers. When presented with a motion for interim injunctive relief, the Court must determine: (i) the likelihood of success on the merits; (ii) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (iii) the balancing of the hardships to the respective parties; and (iv) the public interest. *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted).    In order to obtain the issuance of a mandatory injunction, Plaintiff must show the likelihood of substantial and immediate, irreparable injury and the inadequacy of remedies at law. *McCarthy v. Tribbitt*, 421 F. Supp. 1193 (D. Del. 1976) (citing *O'Shea v. Littleton*, 414 U.S. 488 (1974)).    As described herein, Plaintiff satisfied each of the four requirements for injunctive relief.

A.    **Plaintiff Demonstrates a Likelihood of Success on the Merits of His Claim**

24.    If Plaintiff's condition were allowed to persist untreated, it is unfortunately feared that he would succeed on a claim for damages resulting from CMS's failure to provide adequate or proper medical care for his condition. The Eighth Amendment prescription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Es*telle v. Gamble*, 429 U.S. 97, 103-05 (1976).    In order for a plaintiff to set forth an Eighth Amendment claim, the plaintiff must allege: (i) a serious medical need; and (ii) acts or omissions

6

by prison officials that indicate deliberate indifference to the serious medical need. *Estelle*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

25.    Given the declaration testimony submitted in support of his motion, it is clear that Plaintiff suffers from a serious medical condition.  In addition, CMS's nonfeasance and its counsel's express notification that it will not attempt to intercede in the purported "procedure" for obtaining medical care is misplaced because the "procedure" failed Plaintiff for the past four (4) months.

26.    Based on these acts and failure to act, it is clear that CMS has a policy or custom whereby it refuses to provide care for Plaintiff and is deliberately indifferent to his medical condition.  At Plaintiff's only other appointment with a physician since his condition arose (his April 18 annual physical), Dr. McDonald failed or refused to evaluate Plaintiff's condition and instead summarily determined that Plaintiff was suffering from a muscle pull – prescribing an athletic supporter.  (DeJesus Dec. at ¶ 8).  As disclosed in Plaintiff's declaration, he has not engaged in any activities or routine which he believes could put him at risk for a muscle pull in his groin area.  (*Id.*, at ¶ 2).

27.    Based on the facts asserted in Plaintiff's declaration and CMS's continued refusal to respond to the undersigned's specific requests for medical attention for Plaintiff's serious medical condition, Plaintiff establishes a likelihood of success on the merits of Eighth Amendment claim.

**B.**    **Plaintiff is Suffering From Substantial and Immediate, Irreparable Harm**

28.    As described in Plaintiff's declaration, he suffers from a grape-sized growth next to and connected with his left testicle.  (DeJesus Dec. at ¶ 3).  Recently, he has experienced numbness and a tingling sensation in his left leg.  (*Id.*).  Given the unmistakable disorder presented by Plaintiff's condition, it should be obvious to a reasonable medical provider that

WILMINGTON\77376\1  097343.000

Plaintiff requires immediate medical care and attention.[3] Based on the facts set forth in Plaintiff's declaration, he respectfully submits that he presents a substantial and immediate threat of irreparable harm to his health and well-being.

**C.    The Balance of Hardships Weighs in Favor of Granting Plaintiff's Relief**

29.    The balance of hardships favors the relief Plaintiff requests because there is no legitimate hardship to CMS against which to weigh the immediate and substantial, irreparable injury suffered by Plaintiff.    Here, Plaintiff faces the threat of, at a minimum, substantial medication or surgery.    Without knowing the cause or origin of Plaintiff's condition, loss of one testicle or even death cannot be ruled out at this point.

30.    On the other hand, CMS is paid millions of dollars each year by the State of Delaware to provide medical care and treatment to the State's incarcerated citizens.    At the very least, CMS can evaluate Plaintiff's condition in an effort to make a proper diagnosis and establish a treatment plan.    To the extent that CMS is unable or unwilling to undertake such an endeavor, the Court can require that CMS make arrangements for an independent medical provider to discharge CMS's responsibilities.

31.    Given that CMS cannot present a cognizable hardship against which to weigh the threat of substantial and immediate, irreparable injury to Plaintiff, Plaintiff meets the balancing of hardships requirement for the imposition of a mandatory injunction.

**D.    The Public Interest Weighs in Favor of Providing Adequate and Proper Medical Care to Its Incarcerated Citizens**

32.    The public has an interest in not subjecting its incarcerated citizens to cruel and unusual punishment, including a prohibition against inadequate medical care.    In fact, pursuant to the Memorandum of Agreement between the United States Department of Justice and the State

---

[3] Should CMS challenge this application on the basis that Plaintiff lacks a medical opinion, Plaintiff reserves his right to present a medical opinion in his reply.

WILMINGTON\77376\1 097343.000

of Delaware regarding the medical care and treatment provided at several Delaware prisons, it is clear that the public has an interest in the provision of proper and adequate medical care and attention to its incarcerated citizens.  For these reasons, Plaintiff respectfully submits that the public interest weighs in favor of granting the requested relief.

WHEREFORE, for the foregoing reasons, Plaintiff David DeJesus, Sr. respectfully requests that his emergency motion for injunctive relief be granted and that an order be entered requiring that Defendant Correctional Medical Services, Inc. provide medical care, diagnostic services, treatment and all other reasonably necessary or appropriate services to Plaintiff within three (3) calendar days of this Court's order.[4]

Dated:  May 5, 2008

/s/ David A. Felice
Joseph J. Bellew (#4816)
David A. Felice (#4090)
1201 N. Market Street, Suite 1400
Wilmington, DE  19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
    *Attorneys for Plaintiff David DeJesus, Sr.*

---

[4] Should mandatory injunctive relief be entered, Plaintiff reserves his right to later present a claim for counsel fees and costs.

WILMINGTON\77376\1  097343.000

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID DEJESUS, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-209-JJF |
| | ) | |
| CORRECTIONAL MEDICAL SERVICES, | ) | TRIAL BY JURY DEMANDED |
| INC., WILLIAM JOYCE and DANA | ) | |
| BAKER, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

WHEREAS, Plaintiff David DeJesus, Sr. presented an emergency motion for injunctive relief;

WHEREAS, the Court determines that Plaintiff is presently suffering from a serious medical condition;

WHEREAS, the Court determines that Plaintiff presented a likelihood of success on the merits, a substantial and immediate threat of irreparable injury, that the balance of hardships weighs in favor of granting Plaintiff relief and the public interest weighs in favor of granting such relief;

IT IS HEREBY ORDERED this ___ day of _____, 2008, that Plaintiff's emergency motion for injunctive relief is GRANTED and that Defendant Correctional Medical Services, Inc. is required provide medical care, diagnostic services, treatment and all other reasonably necessary or appropriate services to Plaintiff within three (3) calendar days of this Court's order

_____

The Honorable Joseph J. Farnan, Jr.

WILMINGTON\77376\1  097343.000

## CERTIFICATE OF SERVICE

I, David A. Felice, do hereby certify that on May 5, 2008, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing to the following counsel of record:

> Eric Scott Thompson, Esquire
> Marshall Dennehey Warner Coleman & Goggin
> 1220 North Market Street, 5th Floor
> P.O. Box 8888
> Wilmington, DE  19899

> David A. Felice (#4090)
> Cozen O'Connor
> 1201 North Market Street, Suite 1400
> Wilmington, DE  19801
> Telephone:  (302) 295-2000
> Facsimile:  (302) 295-2013
> Email:  dfelice@cozen.com

# Exhibit A

BEEBE MEDICAL CENTER
424 Savannah Road
Lewes, Delaware  19958
(302) 645-3300

OPERATIVE REPORT

PATIENT NAME:      DEJESUS, DAVID                ROOM:    311A
PATIENT NUMBER:        redacted
DATE OF ADMISSION:  09/17/2007    DATE OF DISCHARGE:

DATE OF SURGERY:  09/17/2007

ATTENDING PHYSICIAN:  Clara Higgins, DO.

PREOPERATIVE DIAGNOSIS:  Acute cholecystitis.

POSTOPERATIVE DIAGNOSIS:  Acute cholecystitis.

PROCEDURE:  Laparoscopic cholecystectomy.

ATTENDING SURGEON:  Clara Higgins, DO

ASSISTANT:  Wanda Custice, RNFA

ANESTHESIA:  General endotracheal anesthesia by Dr. Stephen
Fanto.

ESTIMATED BLOOD LOSS:  25 mL.

DRAINS:  One large Jackson-Pratt to the gallbladder fossa.

CONDITION:  Fair.

FINDINGS:  Edematous and indurated gallbladder with significant
adhesions, gallbladder wall thickening, there was no bile
spillage noted.  There is no stone identified.

SPECIMENS REMOVED:  Gallbladder sent to pathology.

COMPLICATIONS:  None.

OPERATIVE INDICATIONS:  This 38-year-old Latino gentleman was in
his usual state of health, however, had noted a episode of
biliary colic about a month ago.  He again ate some chicken
yesterday and after that, had severe right upper quadrant
epigastric pain with radiation through to his back.  He had
vomited a few times.  Continues to be nauseated and belching.

**OPERATIVE REPORT**                          **BEEBE MEDICAL CENTER**
DEJESUS, DAVID                                    424 Savannah Road
redacted                                       Lewes, Delaware  19958
                                                    (302) 645-3300

He felt feverish.  He was brought to the emergency department
and was examined with a CAT scan that confirmed an edematous
gallbladder with increased pericystic fluid.  There is also
thickened gallbladder wall.  However, there is no obvious stone
noted.  His LFTs were minimally elevated.  His white count was
also elevated to 12,000.  Given these findings and the physical
exam consistent with acalculous acute cholecystitis, the risks
as well as benefits of the proposed procedure, including the
possibility for damage to adjacent organ structures, as well as
bleeding and infection, as well as the conversion to open were
explained to the patient  and after all questions were answered
to his satisfaction, he agreed to proceed.

**OPERATIVE TECHNIQUE:**  The patient was identified and taken to
the operating suite and placed in supine position where
anesthesia provided general endotracheal intubation and
monitoring.  IV antibiotics were on board well as compression
stockings.  The abdomen was then shaved and prepped and draped
in the usual fashion.  A 5 mm infraumbilical incision was
created and taken to the fascia, then using a Veress needle, a
pneumoperitoneum was created without incident.  Using a VisiView
5 mm port, the abdominal cavity was accessed under direct
visualization.  Then the patient was repositioned and an 11 mm
port was placed in the subxiphoid region under direct
visualization as well as 2 strategically placed right upper
quadrant 5 mm ports.  Exam of the abdominal cavity ensued.
There was indeed an edematous and distended gallbladder with
increased fibrinous adhesions and some of these were new as well
as old.  The liver was smooth and glistening.  The transverse
colon was somewhat distended.  The stomach was normal.  There
was some scar tissue at both of his old inguinal hernia repair
sites.

Attention was then directed toward the gallbladder and the
adhesions were carefully taken down back to the neck of the
gallbladder.  The anatomy was such that it was somewhat
elongated and _Cel_ ; however, the cystic duct was clearly
identified.  This was plastered next to the cystic artery.  This
was skeletonized, then 3 clips were placed distal and 1
proximal, and transected, and both the artery and duct were
transected using same clips.  There was a posterior branch of
the cystic artery and this was also ligated with 2 clips, 1
distal and 1 proximal and transected.  Care was taken to stay

DeJ-053

**OPERATIVE REPORT**
DEJESUS, DAVID
redacted

**BEEBE MEDICAL CENTER**
424 Savannah Road
Lewes, Delaware  19958
(302) 645-3300

above the junction of the common bile duct.  The gallbladder was then removed from its fossa using electrocautery, countertraction and then from the abdominal cavity using an Endo-Catch bag.  Inspection of the gallbladder confirmed it to be indurated; however, there were no obvious stones noted.  The gallbladder fossa was examined and confirmed to have hemostasis.  It was irrigated.  Then a 10 mm drain was placed in the fossa, then aspirated clear and all ports were then removed under direct visualization.  The largest port was closed with a figure-of-eight suture of 0 Vicryl and the Marcaine 0.25 percent with epinephrine was injected for postoperative comfort to total 20 mL.  Then the skin was closed with Monocryl followed by Steri-Strips and sterile dressing.  The patient tolerated the procedure well.  He is extubated without difficulty and upon awakening, was transferred to post anesthesia care unit in fair condition.

_____
CLARA HIGGINS, DO

TR:   CH /DC
DD:   09/17/2007 18:46:40
DT:   09/17/2007 21:40:13
JOB:  10222499 /1727626
CC:   LAWRENCE MCDONALD, MD

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAVID DEJESUS, SR., )
)
      Plaintiff, )
)
      v. )   C.A. No. 06-209-JJF
)
CORRECTIONAL MEDICAL SERVICES, )   TRIAL BY JURY DEMANDED
INC., WILLIAM JOYCE and DANA )
BAKER, )
)
      Defendants. )

## DECLARATION OF DAVID DEJESUS, SR.

I, David DeJesus, Sr., hereby state in accordance with the provisions of Title 28, section 1746 of the United States Code as follows:

1.     I am the Plaintiff in the above-captioned matter. I am submitting this Declaration in support of a Motion for Emergency Injunctive Relief given Defendant Correctional Medical Services, Inc.'s ("CMS") failure to provide adequate or reasonable medical attention, care and treatment to my serious medical condition.

2.     I do not engage in a routine of weight training or lift heavy weights of any kind. Moreover, I do not have a job within the prison system, nor am I required to undertake any heavy lifting in my regular day-to-day routine. These facts are true today and at every point since January 2008.

3.     Presently, I suffer from a grape-sized growth next to, and I believe connected with, my left testicle (my "condition") and I now have numbness and tingling in my left leg. The numbness and tingling sensations first surfaced early this week.

4.     I first raised this condition with the CMS medical staff in January of 2008. On January 15 or 17, 2008, I was evaluated by CMS employees and raised this matter with my caregivers. CMS failed or refused to provide any diagnostic review, request any medical history,

recommend any non-medical care or treatment or take any action whatsoever in response to my request or in an effort to provide care or treatment for my condition.

5.    Since that time, I have requested that CMS again evaluate my condition. My sick call requests were not granted.

6.    On March 29, 2008, I submitted a grievance regarding CMS's failure to review, diagnose or treat my condition.

7.    On Friday, April 18, 2008, an appointment was scheduled for me to meet with CMS for the first time since my January 15 or 17, 2008 appointment. I was informed and believe that the purpose of this April 18, 2008 appointment was not to address my condition but was, instead, an annual physical evaluation.

8.    During this April 18 appointment, I expressly informed Dr. McDonald of my condition. Dr. McDonald failed to conduct a physical examination of my condition and did not inquire as to any recent history concerning my condition. Instead, Dr. McDonald summarily suggested that I use an athletic supporter because I may be suffering from a muscle pull.

9.    I do not believe that my condition is the result of a muscle pull. Instead, I fear that it is an abnormal growth that presents a serious and substantial threat to my health and well-being.

10.    On April 25, 2008, my March 29, 2008 grievance was denied. Nonetheless, the grievance board stated in its denial that I should be referred to chronic care. In spite of this recommendation, I have not received any medical care or treatment for my condition.

11.    Given the facts alleged in my litigation and CMS's continued failure or refusal to respond to my sick calls, I do not believe that the further placement of sick calls or grievances will provide the level of treatment or care presently required by my condition.

12.    I request that CMS or an independent medical provider provide an immediate review, diagnosis and treatment for my condition.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 2 day of May, 2008.

David DeJesus, Sr.

# Exhibit C

<u>FORM #585</u>

<u>MEDICAL GRIEVANCE</u>

FACILITY: _S-C-I_

DATE SUBMITTED: 3-29-08

INMATE'S NAME: _David DeJesus Sr_

SBI#: _209513_

HOUSING UNIT: _M S B - G - 1_

CASE #: _____

////////////////////////////////////////////////////////////////////////////////////////

<u>SECTION #1</u>

DATE & TIME OF MEDICAL INCIDENT: _ongoing_

TYPE OF MEDICAL PROBLEM:

I want to let c-m-s know that they are licing about me seeing the Dr once a month and to the court, I am having problem's in pain and no Dr lest time was when I got sick on 1-4-08 and went to B B and was seen by the Dr 1-15-08 is that rigth and they took Blood out on 3-12-08 because they could not find the other Blood work from H-R-Y-C-I that was ? for Aids and was told it was good, c-m-s is playing with me mentoll. My Brother Die of Aids to be put thour this and Dr McDonld never order tested for a lump on my testicle all he said to me I dont know if its a hernia or cancer

GRIEVANT'S SIGNATURE: _David DeJesus Sr_

DATE: _3-29-08_

ACTION REQUESTED BY GRIEVANT: _stop licing to the court and family, that Yall are helping u get me help and stop licing no I am not being seen once a month like Jill said the head of c-m-s here, It must be my look a like because its not me lest time was 1-15-08 again see you all in court, Yall are hurting me mentally Physically_

DATE RECEIVED BY MEDICAL UNIT: _____

<u>NOTE: EMERGENCY MEDICAL CONDITIONS WILL TAKE PRIORITY. OTHERWISE, MEDICAL GRIEVANCES WILL BE ADDRESSED AT THE WEEKLY MEDICAL COMMITTEE MEETING.</u>

MEDICAL GRIEVANCE FORM #585
Page two

## SECTION #2

**IF GRIEVANT DOES NOT AGREE TO THE DECISION OF THE MEDICAL GRIEVANCE COMMITTEE THEY MUST RESPOND , IN WRITTING , WITHIN TWO DAYS OF THE RECIEPT OF THE DECISION. SPACE FOR AN APPEAL HAS BEEN PROVIDED ON THIS FORM IN SECTION #3.**

RESPONSE BY M.G.C.:_____

_____

_____

_____

_____

_____

_____

_____

_____

DATE RECIEVED BY GRIEVVANT:_____ GRIEVANT SIGNATURE:_____

DOES GRIEVANT ACCEPT M.G.C. DECISION? _____(YES) _____(NO)

## SECTION #3

IF YOU WISH TO APPEAL PLEASE USE THE SPACE PROVIDED BELOW:TO EXPLAIN WHY:

_____

_____

_____

_____

_____

_____

_____

GRIEVANT'S SIGNATURE: _____   DATE:_____

**ORIGINAL: INSTITUTION FILE**                              **COPY: GRIEVANT**

# Exhibit D

INFORMAL RESOLUTION

**BRIEFLY STATE THE CONDITIONS OF THE INFORMAL RESOLUTION. LIST THE NAMES, ISSUES AND PARTIES TO THIS AGREEMENT WHICH ADDRESS THE ACTION REQUESTED.**

DeJesus, David    SBI 209513    Case # 154883

Chronic clinic is required to see you every three months. I note that you were recently seen this month, & 3 months previously. Before that there is no CCC paperwork from May of 07

I will put you back onto an MD list for evaluation of your testicle

RESOLVED _____    (UNRESOLVED) 4-24-08

GRIEVANT'S SIGNATURE _____ David DeJesus Sr

DATE  4/24/08

WITNESS (OFFICER) Barbara Show Den

C: INSTITUTION FILE-GRIEVANT

*Unresolved*

## FORM #585

) Im name *David de Jesus*

## MEDICAL GRIEVANCE

Case # __154883__

SBI __209513__    MEDICAL Grievance Committee (MGC) Recommendation

RESPONSE BY M.G.C.: __You are scheduled to return to chronic care Clinic in 60 days for re-evaluation of medical concern (testicle lump). However, I will refer to Dr McDonald and determine if he wishes to order R-FC sooner.__

DATE RECIEVED BY GRIEVANT: __4-25-08__    GRIEVANT SIGNATURE: *David DeJesus Sr*

)
DOES GRIEVANT ACCEPT M.G.C. DECISION? _____(YES)    __✓__(NO)

====================================================

### MGC Appeal Statement

LEASE USE THE SPACE PROVIDED BELOW TO EXPLAIN THE SPECIFICS OF YOUR APPEAL. UPON COMPLETION,
ORWARD THIS FORM TO THE IGC.

This is to show that I need emergency help and no help and I been deny from all my appeal by the Old warden of S-C-I who does and now is the Bureau chief who Does all medical Grievance again why try I will wait into we go to court, c-M-s will use what I said to fix it, so why give them thing they should of fix and be "deny"

EVANT'S SIGNATURE: *David DeJesus Sr*    DATE: __4-27-08__

INSTITUTION FILE
GRIEVANT

**April '98 REV**

# Exhibit E



**COZEN**
**O'CONNOR**
ATTORNEYS

A PROFESSIONAL CORPORATION

SUITE 1400    CHASE MANHATTAN CENTRE    1201 NORTH MARKET STREET    WILMINGTON, DE 19801-1147
302.295.2000    888.207.2440    302.295.2013 FAX    www.cozen.com

April 3, 2008

**David A. Felice**
Direct Phone 302.295.2011
Direct Fax    866.776.8911
dfelice@cozen.com

**VIA FACSIMILE AND US MAIL**

Eric Scott Thompson, Esquire
Marshall Dennehey Warner Coleman & Goggin
1220 North Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE  19899

Re:    *David DeJesus, Sr. v. Williams, et al.*
        **C.A. No. 06-209-JJF**

Dear Eric:

        I am writing to request that your client, Correctional Medical Services ("CMS"), provide immediate medical care and treatment to David DeJesus.  More than two weeks ago, my client placed a sick call to CMS requesting an appointment for an evaluation of severe pain and inflammation in his testicles.  To date, an appointment has not been scheduled, nor has my client been evaluated by any medical personnel.  My client's complaints as to pain and inflammation have only increased since he first reported his condition to me.  I request that you seek CMS's immediate attention to my client's serious medical condition.

        I look forward to hearing from you as to when this appointment is scheduled and the results of the medical evaluation.  Thank you for your consideration of this request.

                    Regards,

                    David A. Felice

                    David A. Felice

DAF/ssl
cc:    David DeJesus
        Joseph J. Bellew, Esquire

WILMINGTON\76321\1  097343.000

# Exhibit F



**COZEN**
**O'CONNOR**
ATTORNEYS

A PROFESSIONAL CORPORATION

SUITE 1400    CHASE MANHATTAN CENTRE    1201 NORTH MARKET STREET    WILMINGTON, DE 19801-1147
302.295.2000    888.207.2440    302.295.2013 FAX    www.cozen.com

April 11, 2008

**David A. Felice**
Direct Phone 302.295.2011
Direct Fax    866.776.8911
dfelice@cozen.com

**VIA FACSIMILE AND US MAIL**

Eric Scott Thompson, Esquire
Marshall Dennehey Warner Coleman & Goggin
1220 North Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE  19899

Re:    *David DeJesus, Sr. v. Williams, et al.*
       **C.A. No. 06-209-JJF**

Dear Eric:

      I am writing to follow up on my letter to you dated April 3, 2008, wherein I requested that your client, Correctional Medical Services, Inc., provide immediate medical care in response to David DeJesus, Sr.'s requests for medical attention pertaining to swelling and pain in his testicles. (A copy of my April 3, 2008 letter is attached hereto). I have heard nothing from you in response to this letter, and I request that you immediately provide me with a status update regarding my request, including the following information:

      1.    The date and time David DeJesus, Sr. is/was scheduled for a medical evaluation regarding his ailment; and

      2.    If the medical evaluation has been conducted, the results of the evaluation.

WILMINGTON\76704\1 097343.000

Eric Scott Thompson, Esquire
April 11, 2008
Page 2

---

     Please respond to these requests at your earliest possible convenience.  Thank you for your consideration of this request.

Regards,

David A. Felice

David A. Felice

DAF/ssl
cc:    David DeJesus
        Joseph J. Bellew, Esquire



**COZEN**
**O'CONNOR**
ATTORNEYS

A PROFESSIONAL CORPORATION

SUITE 1400    CHASE MANHATTAN CENTRE    1201 NORTH MARKET STREET    WILMINGTON, DE 19801-1147
302.295.2000    888.207.2440    302.295.2013 FAX    www.cozen.com

April 3, 2008

**David A. Felice**
Direct Phone 302.295.2011
Direct Fax    866.776.8911
dfelice@cozen.com

**VIA FACSIMILE AND US MAIL**

Eric Scott Thompson, Esquire
Marshall Dennehey Warner Coleman & Goggin
1220 North Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE  19899

Re:    *David DeJesus, Sr. v. Williams, et al.*
       **C.A. No. 06-209-JJF**

Dear Eric:

    I am writing to request that your client, Correctional Medical Services ("CMS"), provide immediate medical care and treatment to David DeJesus.  More than two weeks ago, my client placed a sick call to CMS requesting an appointment for an evaluation of severe pain and inflammation in his testicles.  To date, an appointment has not been scheduled, nor has my client been evaluated by any medical personnel.  My client's complaints as to pain and inflammation have only increased since he first reported his condition to me.  I request that you seek CMS's immediate attention to my client's serious medical condition.

    I look forward to hearing from you as to when this appointment is scheduled and the results of the medical evaluation.  Thank you for your consideration of this request.

                    Regards,

                    David A. Felice

                    David A. Felice

DAF/ssl
cc:    David DeJesus
       Joseph J. Bellew, Esquire

WILMINGTON\76321\1 097343.000

# Exhibit G

A REGIONAL DEFENSE LITIGATION LAW FIRM

# MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN

A PROFESSIONAL CORPORATION    www.marshalldennehey.com

**PENNSYLVANIA**
Bethlehem
Doylestown
Erie
Harrisburg
King of Prussia
Philadelphia
Pittsburgh
Scranton
Williamsport

**NEW JERSEY**
Cherry Hill
Roseland

**DELAWARE**
Wilmington

**OHIO**
Akron

**FLORIDA**
Ft. Lauderdale
Jacksonville
Orlando
Tampa

**1220 N. Market St., 5th Floor, P.O. Box 8888 · Wilmington, DE 19899-8888**
**(302) 552-4300 · Fax (302) 651-7905**

Direct Dial: 552-4370
Email: esthompson@mdwcg.com



April 15, 2008

David A. Felice, Esq.
Cozen O'Connor
1201 N. Market St., Ste. 1400
Wilmington, DE 19801

      Re:    David DeJesus, Jr. v. CMS
             Our File No: 13252-00174
             C.A. No: 06-209 JJF

Dear David:

      I am in receipt of your April 11, 2008 correspondence requesting a response to your April 3, 2008 correspondence demanding immediate medical care for your client's swelling and pain in his testicles. The April 3, 2008 correspondence was received on April 4, 2008 and forwarded that day to my client. They are in possession of the correspondence and it has been forwarded to the appropriate people. With regard to your request for the date and time your client was scheduled for a medical evaluation and the results of any evaluation that was conducted, I am not in possession of this information. This most recent complaint by your client appears to be beyond the scope of the litigation currently pending in this matter. However, if you still require this information, please make a formal request and any discoverable documents relating to that request will be produced.

                         Very truly yours,

                         Eric Scott Thompson

EST:pll

cc:    Courtney Doutel Barta, Cl. #VHS-05-55407 (via email)

      Vicki Clines (via email)

15/607000.v1

# Exhibit H

# MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN

A PROFESSIONAL CORPORATION    www.marshalldennehey.com

PENNSYLVANIA
Bethlehem
Doylestown
Erie
Harrisburg
King of Prussia
Philadelphia
Pittsburgh
Scranton
Williamsport

NEW JERSEY
Cherry Hill
Roseland

DELAWARE
Wilmington

OHIO
Akron

FLORIDA
Ft. Lauderdale
Jacksonville
Orlando
Tampa

1220 N. Market St., 5th Floor, P.O. Box 8888 · Wilmington, DE 19899-8888
(302) 552-4300 · Fax (302) 651-7905

**Direct Dial:** 552-4370
**Email:** esthompson@mdwcg.com



April 25, 2008

**VIA FACSIMILE**

David A. Felice, Esq.
Cozen O'Connor
1201 N. Market St., Ste. 1400
Wilmington, DE 19801
Facsimile: (866) 776-8911

> Re:    David DeJesus, Jr. v. CMS
> Our File No: 13252-00174
> C.A. No: 06-209 JJF

Dear David:

Pursuant to your voice message received today, enclosed is a copy of the January 17, 2008 medical note regarding treatment to your client.

Over the past week, you and I have been conversing regarding Plaintiff's complaints of a lump on or near his testicles. This is not an issue in the pending litigation. Procedures have been put into place for prisoners in the State of Delaware to obtain treatment. If they are not satisfied with the treatment they have received or not received, administrative remedies are available to them. It is not appropriate for this counsel to circumvent these procedures to grant favoritism to a prisoner involved in litigation as opposed to those who are not. If Plaintiff does not believe he is obtaining proper treatment or believes he needs immediate treatment, he can follow the internal procedures to obtain this.

I am not involved in the providing of medical treatment to prisoners and will not interject myself into the treatment which the doctor and medical staff are providing to prisoners, including Plaintiff, to determine whether Plaintiff needs additional treatment. Therefore, it is my recommendation your client pursue the internal prison procedures in order to obtain treatment. That being said, I have informed my client of Plaintiff's complaints, but will take no further action with regard to contacting my client to schedule Plaintiff to receive medical care.

David A. Felice, Esq.
April 25, 2008
Page 2

_____

                              Very truly yours,

                              Eric Scott Thompson

EST:pll

Enclosure

cc:     Courtney Doutel Barta, Cl. #VHS-05-55407

        Vicki Clines

15/612245.v1

# Chronic Disease Clinic Follow-Up

Inmate Name: _____
Number: _209513_  Institution: _SCI_

List chronic diseases:

| | | |
|---|---|---|
| 1) _Renal_ | 3) | 5) |
| 2) | 4) | 6) |

Attach pharmacy profile or list current medications:
_No MAR meds Zinfan_
_MVI_   _H2's 135_

## Subjective:

Asthma: # attacks in last month? _____
# short acting beta agonist canisters in last month? _____
# times awakening with asthma symptoms per week? _____

Seizure disorder: # seizures since last visit? _____
Diabetes mellitus: # of hypoglycemic reactions since last visit? _____
Weight loss/gain ↓ ↑   #lbs _____

CV/hypertension (Y/N): Chest pain? _____ SOB? _____ Palpitations? _____ Ankle edema? Ø
HIV/HCV (Y/N): Nausea/vomiting? Ø   Abdominal pain/swelling? LLQ   Diarrhea? Ø   Rashes/lesions? Ø

For all diseases, since last visit, describe new symptoms:
_Cramps - diarrhea sec_

## Vital signs:
Temp _99.7_  BP _108/72_  Pulse _80_  Resp _20_  Wt _178_  PEFR _____  INR _____

Labs: Hgb A1C _____  HIV VL _____  CD4 _____  Total Chol _____  LDL _____  HDL _____  Trig _____

Range of fingerstick glucose/BP monitoring: _____

PE: _(WNV) (WNL) PERRL Pupils Bangn Sclera Mucosa Throat Clear_

| | |
|---|---|
| HEENT/neck: _Bruits Thyroid_ | Extremities: _Ø LE edema_ |
| Heart: _RRR S no_ | Neurological: _Pedis Clear Sensory_ |
| Lungs: _Clear_ | GU/rectal: _Digitally Intact_ |
| Abdomen: _(WNL) Soft nontender_ | Other: _Ø Femoral Bruits_ |

_Masses_   _Chest Wall nontender_

## Assessment:

| | | Degree of Control | | | | Clinical Status | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | G | F | P | NA | I | S | W | NA |
| 1 | _HCV_ | ☑ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 2 | _Renal_ | ☐ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 3 | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 4 | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

## Plan:

Medication changes: _____

Diagnostics: _____

Labs: _CBC Chem 24 PT, INR Lipase_

Monitoring: BP: _____ X day/week/month   Glucose: _____ X day/week/month   Peak flow: _____ Other: _____

Education provided: ☑Nutrition  ☑Exercise  ☐Smoking  ☑Test results  ☐Medication management  ☐Other.

Referral (list type): Specialist: _____   Chronic care program: _____

# days to next visit? ☑90  ☐60  ☐30  ☐Other: _____   Discharged from CCC: [name] _____

Advance Level Provider Signature _____   Date: _4-17-08_