IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID DEJESUS, SR., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civ. No. 06-209-LPS |
| : | |
| CORRECTIONAL MEDICAL : | |
| SERVICES, INC., WILLIAM JOYCE : | |
| and DANA BAKER, : | |
| : | |
| Defendants. | |

## MEMORANDUM ORDER

Plaintiff, David DeJesus, Sr., ("DeJesus"), an inmate at the Sussex Correctional Institute, filed this lawsuit pursuant to 42 U.S.C. § 1983 against Correctional Medical Services, Inc. ("CMS"), William Joyce, and Dana Baker (collectively "Defendants"). (D.I. 2; D.I. 10) Pending before the Court is Defendants' Motion for Summary Judgment. (D.I. 182) For the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment.

## BACKGROUND

DeJesus was an inmate at the Howard R. Young Correctional Institute ("Gander Hill") in 2005 and was subsequently transferred to Sussex Correctional Institute ("Georgetown") in 2006. (D.I. 185 ¶ 2) Prior to being incarcerated, he contracted Hepatitis C and suffered from various liver ailments. (*Id.* at ¶ 4) Starting in October 2005, DeJesus began experiencing a sharp pain in his abdomen, which he attributed to his Hepatitis C and related liver problems. (*Id.* at ¶ 5) On October 25, 2005, DeJesus filed a medical grievance at Gander Hill claiming he had not been seen by a doctor despite his requests for medical care for his pain. (D.I. 184 ex. D) On June 8,

1

2006, a committee denied his grievance because it found that he had been seen on November 21, 2005 and January 19, February 27, March 9, and May 31, 2006 for his condition. (D.I. 184 ex. E) DeJesus' appeal of the decision was denied in November 2006. (D.I. 184 ex. G)

DeJesus continued to receive medical treatment – including blood tests and ultrasounds, as well as enrollment in a Hepatitis C Intervention program (beginning in early 2007) – between October 25, 2005 and August 2, 2007, yet he also continued to experience side pains. (*See generally* D.I. 183 ex. H; *see also* D.I. 184 ex. A) An August 2, 2007 ultrasound of DeJesus' abdomen indicated that his liver was deteriorating, but otherwise revealed no additional problems. (*See* D.I. 183 ex. I) A few days later, on August 7, DeJesus experienced increasing pain and requested to see a doctor. (D.I. 185 ¶ 6) On August 10, 2007, a nurse saw DeJesus and informed him that he could not see a doctor because his blood work, scheduled for August 13, was not yet complete. (*Id.* at ¶ 7) DeJesus was never called for his blood work, and he continued to go to the infirmary daily until September 16 complaining of his pain. (*Id.* at ¶¶ 8-13)

On September 17, inmates alerted correctional officers in the middle of the night that DeJesus was crying in excruciating pain in his cell and took him to the infirmary to see a nurse. (*Id.* at ¶ 15) Although the nurse stated that DeJesus could not be taken to the emergency room without the permission of a doctor, the officer accompanying DeJesus obtained the permission from his superior to call an ambulance to take him to the hospital. (*Id.* at ¶¶ 16-17) At the hospital, a CT scan of DeJesus' abdomen revealed that he had acute cholecystisis (inflammation of the gallbladder); a cholecystectomy was then performed and his gallbladder removed, which ultimately alleviated his pain. (*Id.* at ¶¶ 18-19)

In his lawsuit, DeJesus alleges deliberate indifference to his serious medical needs,

specifically the delay or refusal to treat pains that eventually led to the removal of his gallbladder. (D.I. 10; D.I. 183 ex. K) He alleges that over the course of two years, (1) Defendants refused him medical care for an obvious and serious medical need by disregarding his complaints of pains in his side (D.I. 184 at 10); and (2) CMS had a "custom of ignoring medical complaints and delaying treatment" which "constituted a 'deliberate indifference' to Plaintiff's serious medical needs." (D.I. 184 at 11)

Defendants have moved for summary judgment on several bases: (1) Plaintiff conceded that he has no claim; (2) Plaintiff cannot demonstrate that Defendants were deliberately indifferent to Plaintiff's serious medical needs; (3) Plaintiff cannot establish supervisory liability for Defendants Joyce and Baker; and (4) Plaintiff has failed to show a CMS custom or policy that led to a deprivation of Plaintiff's medical needs. (D.I. 182; D.I. 183)

Having reviewed the record, the Court agrees with Defendants that Plaintiff has failed to adduce evidence from which a reasonable factfinder could find that Defendants were deliberately indifferent to his medical needs. Thus, the Court need not address the other grounds on which Defendants' motion is based.

## LEGAL STANDARDS

### I. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n. 10 (1986). A party asserting that a fact cannot be or, alternatively, is genuinely disputed must

be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586–87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247–48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v.*

*Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial")

## II.  42 U.S.C. § 1983

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). In order to set forth a cognizable claim for a violation of the Eighth Amendment, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *See id.*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *See Harrison v. Barkley*, 219 F.3d 132, 138–140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 when the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment, or maintains that options available to medical personnel were not pursued on the inmate's behalf. *See Estelle*, 429 U.S. at 107. Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *See White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986)

(stating negligence is not compensable as a Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

## **DISCUSSION**

Defendants argue that Plaintiff DeJesus has failed to present any evidence showing that he had (1) a serious medical condition and that (2) Defendants were deliberately indifferent to that condition. (*See* D.I. 183 at 9) Defendants premise their first argument on *Paith v. County of Washington*, in which the Third Circuit stated that "a prisoner's claim of deliberate indifference to a serious medical need requires expert testimony when the seriousness of injury or illness would not be apparent to a lay person." 394 F. App'x 858, 860 (3d Cir. 2010). Defendants also argue that the numerous doctor visits throughout 2006 and 2007 evidence their responsiveness– not indifference– to his medical needs. (D.I. 183 at 10-11; D.I. 186 at 4) Finally, Defendants argue that Plaintiff has failed to demonstrate that the care provided between August 7 and September 16, 2005 leads to an inference that they knew of Plaintiff's condition and were deliberately indifferent towards it. (D.I. 186 at 5)

Although Plaintiff concedes that Defendants were not deliberately indifferent to his liver problems, he maintains that there is a genuine dispute of fact as to whether Defendants consciously disregarded Plaintiff's serious gallbladder condition. (D.I. 184 at 1-2) According to Plaintiff, CMS medical personnel "ignored [his] pleas for help for nearly two years" and "delay[ed] medical treatment . . . thereby causing unnecessary infliction of pain." (D.I. 184 at 2) Plaintiff thus contends that summary judgment is inappropriate because he has "alleged facts that rise far above a mere disagreement with the treatment provided by the doctors and nurses

6

employed at CMS." (D.I. 184 at 10) The Court disagrees.

Plaintiff cites little evidentiary support for his contentions; in many instances his conclusory allegations are unsupported by citation to the evidentiary record. When he does cite evidence, sometimes it contradicts his assertions. For example, Plaintiff cites to the denial of a medical grievance (D.I. 184 ex. E) as proof that CMS intentionally delayed or refused him medical care. (*See* D.I. 184 at 11-12) But an examination of the committee's decision shows that the grievance was denied specifically because DeJesus had already received medical care. (*See* D.I. 184 ex. E) Plaintiff appears to cite to no other support for the argument that Defendants "ignored [his] pleas of help for nearly two years." (*See generally* D.I. 184) Contrary to Plaintiff's allegations, the record contains not only extensive documentation of numerous visits with doctors from around the date of Plaintiff's incarceration until August 2, 2007, but also Plaintiff's own journal, which corroborates that these visits occurred. (*Compare* D.I. 183 ex. H *with* D.I. 184 ex. A) Indeed, Plaintiff's assertion that Defendants knew of Plaintiff's gallbladder condition and were willfully indifferent is plainly contradicted by the record: Plaintiff received numerous ultrasounds and diagnostic tests in the years leading up to his surgery, and even the ultrasound taken as late as August 2, 2007 revealed no signs of cholecystisis. (*See* D.I. 183 ex. H; *see also* D.I. 183 ex. I)

Plaintiff contends that the instances on which Defendants refused him medical care, and the delay of medical treatment between August 7, 2007 and the emergency surgery of September 17, 2007, are "sufficient [evidence] to establish a claim for deliberate indifference to a serious medical need." (D.I. 184 at 9) Plaintiff cites *Walker v. Brooks*, 2009 WL 3183051 (W.D. Pa. Sept. 30, 2009), as support for his contention. (D.I. 184 at 9) According to Plaintiff, in *Walker*

the district court held that a jury could find that a delay in treatment could amount to deliberate indifference, and DeJesus experienced a similar delay in surgical treatment of his condition. *See Walker*, 2009 WL 3183051, at *6. However, in considering *Walker*, the differences are more striking than the similarities. In *Walker*, a doctor recommended the plaintiff for surgery but the surgery was delayed because the plaintiff was in solitary confinement. *See* 2009 WL 3183051, at *4. The *Walker* Court found that the delay was for non-medical reasons. *See id.* at 4-5. Here, by contrast, there was no doctor's recommendation followed by a delay for non-medical reasons.

Plaintiff offers no support for his assertion that Defendants even knew of his need for surgery. Rather, even assuming that the severity of Plaintiff's condition was obvious to a layperson, and construing the record evidence in the light most favorable to Plaintiff, Defendants' conduct following the August 2 ultrasound supports, at most, a claim for negligence in diagnosis. This is not an adequate basis for Plaintiff's claim of "deliberate indifference." Therefore, the Court will grant Defendants' Motion for Summary Judgment.

## CONCLUSION

Accordingly, for the reasons stated above,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (D.I. 182) is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff and to CLOSE the case.

December 23, 2013
Wilmington, Delaware

UNITED STATES DISTRICT JUDGE